## 56793. E. C. LONG, INC. v. BRENNAN'S OF ATLANTA, INC.

QUILLIAN, Presiding Judge.

Defendant, E. C. Long, Inc., appeals from the grant of a partial summary judgment, striking three of its defenses to an action by the plaintiff, Brennan's of Atlanta, Inc., for damages arising from an explosion and fire which destroyed the proposed Brennan's restaurant

at 103 West Paces Ferry Road, Atlanta.

Brennan's of Atlanta, Inc., purchased a "James River Georgian Mansion" located on West Paces Ferry Road for the purpose of converting it into a restaurant. They contracted with E. C. Long, Inc., as general contractor, to renovate and convert the residence into a restaurant. Long contracted with B & W Service Company to perform certain grading work. On July 17, 1972, B & W bulldozed a tree and when the tree was uprooted, a gas line which had passed through the roots was broken. It is alleged that gas from the broken main seeped into the mansion. An explosion and fire followed and the mansion was destroyed.

Brennan's had purchased the mansion for $300,000. It carried the property on its books as the land having a value of $170,000 and the mansion having a value of $130,000. Brennan's had procured insurance on the mansion and was paid a total of $130,000 by the three insurers. Brennan then brought this action against Long, B & W Service Company, and the Atlanta Gas Light Company for damages totaling $450,000. Included within the complaint were damages to the residence; cost of preparing plans, drawings, and specifications for conversion of the residence to a restaurant; cost for removal of debris after the fire; cost of work performed prior to destruction of the mansion; lost profits; and other damages to be added by amendment.

Defendant Long included as his third defense: Brennan's was not the real party in interest; as his fourth defense: there had been an accord and satisfaction between Long and Brennan's; and as a fifth defense: that Long was an insured under the fire policies and to the extent that plaintiff's claims included claims of those insurers, it was barred by payment of benefits under those insurance policies. The court granted plaintiff's motion for partial summary judgment and struck defendant Long's third, fourth, and fifth defenses. Long brings this appeal. *Held:*

1. Brennan's and Long executed a "Standard Form of Agreement Between Owner and Contractor" of the American Institute of Architects. The contract provisions relevant to this action provide: "11.3 Property Insurance.

11.3.1 Unless otherwise provided, the *Owner* [Brennan's] *shall purchase* and maintain property *insurance upon the entire Work* at the site to the full insurable value thereof. *This insurance shall include the* interest of the *Owner, the Contractor,* Subcontractors and Sub-subcontractors *in the Work* and shall insure *against* the perils of *Fire,* Extended Coverage, Vandalism and Malicious Mischief." (Emphasis supplied.)

Paragraph "1.1.3 The Work. The term Work includes all labor necessary to produce the construction required by the Contract Documents, and all materials and equipment incorporated or to· be incorporated in such construction."

Apparently, pursuant to its obligation under Paragraph 11.3.1 the owner, Brennan's, procured insurance through an insurance agent, Bailey, Engelhardt & Vega, Inc. The Binder shows that three insurance companies, "Commercial Union, American, and Continental Casualty," each would issue policies for $105,000 to "Brennan's of Atlanta, Inc. Owner & E. C. Long, Contractor" in the amount of "315,00" (sic) "[o]n the one story masonry building occupied as Restaurant and situated 103 W. Paces Ferry Road, N. W. Atlanta." The insurance policies themselves were not introduced in evidence and we have no other description of the property or the insureds intended to be covered. However, when the insurance companies forwarded their drafts to Brennan's to cover the claim for the explosion and fire, the drafts from American and Commercial Union were made out jointly to Brennan's and Long, and the draft from Continental Casualty was made only to Brennan's. But Brennan's forwarded all three drafts to Long for its indorsement with a cover letter explaining the drafts were for "the loss which they sustained to the West Paces Ferry Road property." After the drafts were indorsed by Long and returned to Brennan's, all insurance companies then took a "loan receipt" from Brennan's which stated, essentially: "Received from the [insurance company] $43,333.33 as a loan without interest repayable only in the event and to the extent of any net recovery the undersigned [Brennan's of Atlanta]· may make from any person . . . or other parties causing or liable for the loss or

damage . . . and as security for such a payment, the undersigned [Brennan's] pledges to the said [Insurance] Company all his, its, or their claim or claims against said person, persons . . . any recovery thereon."

Defendant Long acknowledges that Georgia law recognizes a loan receipt instrument by an insurer to his insured permits an action against an alleged wrongdoer to be brought in the name of the insured. *McCann v. Dixie Lake &c. Co.,* 44 Ga. App. 700 (1)(162 SE 869); *Green v. Johns,* 86 Ga. App. 646 (2) (72 SE2d 78). The wording of the loan receipts in the instant case is similar to that of the cited cases and would appear to be dispositive of this issue — except this case has one fact not included within those cases. The present defendant is a named insured in the policy of insurance.

(a) The first enumerated error addresses the defendant's "Third Defense" which was: "The plaintiff, Brennan's of Atlanta, Inc., is not the real party in interest . . ." We will note in passing that this was not a motion "to require [plaintiff] to [add the insurer] as an additional party plaintiff because it was 'a party at interest.' " See *Southeast Transport Corp. v. Hogan Livestock Co.,* 133 Ga. App. 825, 826 (212 SE2d 638).

Professor Moore advises that "[c]ases construing the real party in interest provision can be more easily understood if it is borne in mind that the true meaning of real party in interest may be summarized as follows: *An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced."* 3A Moore's Federal Practice 17-65, § 17.07.

The court correctly granted summary judgment for plaintiff as to this defense, for regardless of the merit of plaintiff's claim for damages to the mansion it is only one of thirteen enumerated items of alleged damages sought to be enforced against the defendant by the plaintiff. Brennan's is a proper party plaintiff to the remaining categories of damages alleged to have been caused by the negligence of the defendant and his sub-contractor, which items were not covered by Brennan's insurance on behalf of the plaintiff and the defendants. This enumeration is without merit.

(b) We turn to the third enumerated error which

deals with the grant of the motion for summary judgment for plaintiff, striking defendant's fifth defense in which he alleged he was "an insured under certain fire policies issued by insurers who are real parties in interest in a portion or all of plaintiff's claim for damages. To the extent that plaintiff's claim for damages involve claims of these insurers, the claims are barred by virtue of the existence of these policies of insurance and the payment of benefits thereunder." We agree.

The contract between Brennan's and Long provided: "11.3.6 The Owner and Contractor waive all rights against each other for damages caused by fire or other peril *to the extent covered by insurance provided under this Paragraph* 11.3 . . ." (Emphasis supplied.) As stated earlier, apparently the owner — Brennan's, procured this insurance under its obligation of paragraph 11.3 as this was the only insurance noted which covered the owner *and* the contractor on this construction project. Brennan's contends "the Contract between Brennan's and Long provided that the insurance policies procured by Brennan's for Long would cover damage only to Long's 'Work' . . . Long was an insured only to the extent of its limited interest in the 'Work,' . . . Long sustained no damage to its 'Work' and, therefore, was afforded no coverage under these policies . . . for purposes of this incident, Long, in effect, was not an insured under the policies." We can not agree. Long was a named insured in the binder and had an insurable interest in the project. Under Georgia law, a person has an "insurable interest" in property when he has "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." Code Ann. § 56-2405 (2) (Ga. L. 1960, pp. 289, 658); *Pike v. American Alliance Ins. Co.,* 160 Ga. 755, 761 (129 SE 53). Where the subject matter of insurance is a builder's risk policy, whether for construction, alteration, or repair, the building contractor who has entered into such a contract has an insurable interest in the building. See generally 3 Couch on Insurance 2d, p. 112, § 24.29; 1 Richards on Insurance 347-348, § 80; Annot. 94 ALR2d 226, § 2; 43 AmJur2d 511, Insurance, § 470; 44 CJS 882, Insurance, §

186. When such risk is deemed to have commenced is decided by the wording of the policy, otherwise, — normally while "under construction." 94 ALR2d 226. The building here was "under construction" at the time of the fire as the defendant Long had been paid $15,000 for his work up to the time of the fire. Mr. Guglielmo, Treasurer of Brennan's testified he had paid Long $16,336.52 before the fire. We conclude that defendant Long had an insurable interest in the building under construction. See 43 AmJur2d 507, 511; §§ 466, 470.

Thus, the builder's contract between Brennan's and Long required Brennan's to take out insurance on "the entire Work on behalf of himself, the contractor and sub-contractors. Defendant Long was a named insured in that contract and did have an insurable interest in the mansion. As this insurance was procured under paragraph 11.3, and the owner and contractor contracted to "waive all rights against each other for damages caused by fire or other peril to the extent covered by insurance provided under this Paragraph," was a claim for damages to the mansion, caused by fire as a result of the negligence of the contractor or sub-contractor, waived by this provision? We conclude that it was.

First, the waiver provision renounced all claims between the parties to the contract "to the extent covered by insurance provided under this Paragraph." The fire insurance contract on the mansion was such insurance even though it covered the mansion rather than the "work." Brennan's could have reasoned that as labor and materials were incorporated into the mansion, such "work" would then be covered under this contract. Although this would not be in complete compliance with the contract, it was the method chosen by the owner to comply with Paragraph 11.3 of the contract. He will not now be heard to say that even if it was in compliance with the contract, Long had no financial interest in any of the loss caused by the fire, and as the insurance Brennan's was required to procure dealt only with "work" it would not include the mansion. This reasoning ignores the plain wording of the waiver clause: "Owner and Contractor waive all right against each other for damages caused by fire or other perils *to the extent covered by insurance*

*provided under this Paragraph 11.3 . . ."* (Emphasis supplied.) The waiver clause does not restrict waiver of damages to "work" but to the proceeds of *any* insurance provided under Paragraph 11.3. The insurance involved was acquired by the owner as compliance with Paragraph 11.3. The contract required a waiver against the other party to the extent the injured party was reimbursed by insurance.

The United States Supreme Court has construed similar clauses. In Luckenbach v. W. J. McCahan Sugar Ref. Co., 248 U. S. 139, 145-146 (39 SC 53, 63 LE 170), where a shipper insured his goods, and the bill of lading with the carrier contained the following clause: " 'In case of any loss, detriment or damage done to or sustained by said goods or any part thereof for which the carrier shall be liable to the shipper ... The carrier shall to the extent of such liability have the full benefit of any insurance that may have been effected upon or on account of said goods.' " The court held: "Such a clause is valid, because the carrier [the contractor in the instant case] might himself have insured against the loss, even though occasioned by his own negligence; and if a shipper [owner] under a bill of lading [contract in the instant case] containing this provision effects insurance and is paid the full amount of his loss, *neither he nor the insurer can recover against the* carrier [*contractor* in the instant case]." Id. at 146. (Emphasis supplied.) Accord, Great Lakes Transit Corp. v. Interstate S. S. Co., 301 U. S. 646, 654 (57 SC 915, 81 LE 1318).

In a case with similar facts the court held: ". . . an insurer, who has paid a loss, may use the name of the assured in an action to obtain redress from the carrier [contractor in the instant case] whose failure of duty caused the loss. [Cit.] But it is equally well settled that the right, by way of subrogation, of an insurer, upon paying for a total loss of the goods insured [the mansion in the instant case], to recover over against the carrier [contractor] is only that right which the assured has, and that accordingly when a bill of lading [contract] provides that the carrier [contractor here], when liable for the loss, shall have the benefit of any insurance that may have been effected upon the goods, this provision is valid, as

between the carrier [contractor here] and the shipper [owner here]; and that, therefore, such provision limits the right of subrogation of the insurer, upon paying the shipper [owner] the loss, to recover over against the carrier [contractor in the instant case]. [Cits.] If a valid claim by the underwriter [insurer] to be subrogated to the rights of the owner will not arise where the carrier [contractor] has contracted with the owner that he, the carrier [contractor], shall have the benefit of any insurance, it would seem to be clear that where the carrier [contractor] is actually and in terms the party insured, the underwriter [insured] can have no right to recover over against the carrier [contractor], even if the amount of the policy has been paid by the insurance company to the owner on the order of the carrier . . . Clearly, under this state of facts, [the carriers, who had procured the insurance and transferred it to the owner] were, nominally at least, the parties insured, and came within the terms of the policy, and upon a loss, were entitled to receive the amount of the policy, and of course in that event, the insurers could not, after having paid [the carriers] the amount of the loss, recover it back from them under the principle of equitable subrogation." Wager v. Providence Ins. Co., 150 U. S. 99, 108-109 (14 SC 55, 37 LE 1013). Accord, Great Lakes Transit Corp. v. Interstate S. S. Co., 301 U. S. 646, 654, supra.

A more simple method of stating the above principles is that an insurer may not insure an insured against a peril for a premium, and when the loss occurs — pay the insured, take subrogation, and then sue the insured on the basis that his negligence caused the damage. See 16 Couch on Insurance 2d 310, § 61:133. In the same manner where there are two co-insured, and the insurer pays one insured the amount claimed as damages, "[n]o right of subrogation arises against a person who holds the status of an additional insured . . ." 16 Couch on Insurance 2d, p. 310, § 61-134. Accord, 6A Appleman, Insurance Law and Practice 146, § 4055; Stetina v. State Farm Mutual Auto Ins. Co., 196 Neb. 441 (243 NW2d 341); Transamerica Ins. Co. v. Gage Plumbing & Heating Co., 433 F2d 1051 (10th Cir. 1970) (building contractor).

Accordingly, we find two principles which prohibit

action against the contractor Long for the damages to the mansion. First: Long was a co-insured, and had an insurable interest in the building then under construction. The insurer having paid the other insured (the owner), cannot take subrogation and sue a co-insured even though the co-insured caused the damages. Since the insurers cannot sue Long directly, we will not permit them to do this indirectly by issuing drafts to both insured, Brennan's and Long, stating "Pay the sum of . . . $43,333.33 For All claims . . . To . . . Long, Contractor and Brennans," and "Pay . . . $43,333.33 . . . to Brennan's . . . [and] E. C. Long . . . In payment of All Claims for Explosion & Fire Damage . . ."; and another which stated "in payment of Any and All Claims" and then require one co-insured (Brennan's) to sign a "loan receipt" which directs him to sue his co-insured (Long) and remit the funds to the insurance companies.

The second reason this will not be permitted is that the contractor and owner waived claims against each other for fire damage to the extent covered by insurance. The damages to the mansion were covered by insurance. The owner has waived this portion of his claim against the contractor.

2. The holding above moots the issue of whether there was an accord and satisfaction between the owner and contractor when the contractor signed all checks and returned them to the owner.

3. We need not reach the issue of the "loan receipt" in this transaction as the above findings are dispositive of this appeal. However, for resolution of those issues, which includes cases in conflict in Georgia — see Annots. 13 ALR3d 42, Validity and Effect of Loan Receipt or Agreement Between Insured and Insurer For a Loan Repayable To Extent of Insured's Recovery From Another; 13 ALR3d 140, Proper Party Plaintiff, Under Real Party In Interest Statute (Code Ann. § 81A-117 (a)), To Action Against Tortfeasor For Damage To Insured Property Where Insured Has Paid Part of Loss; 13 ALR3d 229, Proper Party Plaintiff, Under Real Party In Interest Statute, To Action Against Tortfeasor For Damage To Insured Property Where Loss Is Entirely Covered by Insurance.

*Judgment reversed. Webb and McMurray, JJ., concur.*

SUBMITTED NOVEMBER 6, 1978 — DECIDED JANUARY 5, 1979 — REHEARING DENIED JANUARY 29, 1979 — 

*Carter, Ansley, Smith & McLendon, Ben Kingree, A. Terry Sorrells,* for appellant.

*Long, Weinberg, Ansley & Wheeler, Rosa B. Lord, J. Kenneth Moorman, Hansell, Post, Brandon & Dorsey, Hugh E. Wright, Cotton, Katz & White, J. Timothy White,* for appellee.