NO. 07-11-0038-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 23, 2012
_____

AMERICAN ZURICH INSURANCE COMPANY, AS SUBROGEE OF THE VARSITY
GOLF CLUB, LTD D/B/A THE UNIVERSITY OF TEXAS GOLF CLUB, APPELLANT

V.

BARKER ROOFING, L.P, APPELLEE

_____

FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-10-001903; HONORABLE SUZANNE COVINGTON, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

This is an appeal from an order granting summary judgment in favor of Appellee, Barker Roofing, L.P. (Barker) in a subrogation lawsuit filed by Appellant, American Zurich Insurance Company (AZIC), as Subrogee of the Varsity Golf Club, Ltd d/b/a The University of Texas Golf Club (UT), seeking to recover damages suffered by its insured, UT, due to a fire allegedly caused by Barker. The trial court granted summary judgment based upon the affirmative defense of waiver. By five issues, AZIC asserts the trial

court erred because (1) two clauses in the subcontract between Barker and the prime contractor, Harvey-Cleary Builders (HCB) modified or were controlling over the contractual waiver of subrogation provision in the general contract between UT and HCB, and (2) the contractual waiver provision did not apply to either the business interruption losses reimbursed by AZIC, or (3) the uninsured business interruption losses suffered by UT. AZIC also asserts the trial court erred by (4) denying AZIC's no-evidence motion for partial summary judgment on Barker's affirmative defense of waiver because neither UT nor AZIC waived their subrogation rights, and (5) granting summary judgment in favor of Barker on AZIC's breach of contract claims because those claims were not addressed by Barker's summary judgment motion. We affirm.

## Background

The cause underlying this appeal is AZIC's subrogation claim for losses resulting from a fire allegedly caused by Barker's negligence during the construction of a clubhouse for the benefit of UT. Barker contends that because those claims are derivative from UT's claims, they were waived by a contractual waiver of subrogation contained in the original construction contract between UT and HCB.

### AZIC's Coverage

UT was insured under a commercial insurance policy issued by AZIC. Under the policy's *Commercial Property Coverage Part Declarations*, AZIC insured UT against, among other things, real and personal property damage including business income loss. The policy period ran from December 1, 2007 to December 1, 2008 and coverage was subject to a $5,000 property deductible applicable to all loss, damage, cost or expense.

The *Commercial Property Coverage* contained a *Business Income Coverage Form* that insured UT against an actual loss of business income sustained due to a necessary suspension of its operations.  To be covered, however, the suspension "[was required to] be caused by direct physical loss of or damage to property at a 'premises.'"[1]

The *Business Income Coverage* also provided that "[i]f any person or organization for whom we make payment under this Commercial Property Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment."  It further provided that UT could, "without restricting [its] coverage waive [its] rights against another party in writing [p]rior to a loss."

### UT/HCB Contract -- Builder's Risk Insurance

In February 2007, UT and HCB executed a general contract for the construction of the UT Phase 2 Clubhouse Improvements with a stipulated contract sum of $5,767,055.  Under the contract, the "Work" comprised "the completed construction required by the Contract Documents, and include[ed] all labor and services necessary to produce construction of, and all materials and equipment incorporated or to be incorporated in the construction of, the improvements, set forth in the Contract Documents."

Per the *Conditions of the Contract,* UT was required to "purchase and maintain property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the Initial Contract Sum . . . comprising total value for the entire Project at the

---

[1]Under the *Commercial Property Coverage Part,* "Premises #1" was defined as 2200 University Club Drive, Austin, Texas, i.e., the address of the UT clubhouse destroyed by fire.

3

site on a replacement cost basis without optional deductibles." In the event of a covered loss, Article 11 of the *Conditions* entitled *Insurance and Bonds* provided that UT would be responsible for any deductible that might apply "except for the first $5,000.00 of the cost of any deductibles, which [would] be paid by [HCB]." The *Conditions* further provided that the property insurance must "include [the] interests of Owner, Contractor, Subcontractors and Sub-subcontractors in the Project" and "include without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage . . . ."

Paragraph 11.2.1.6 of the *Conditions* contained a waiver of subrogation[2] stating as follows:

> The Owner and Contractor waive all rights against each other and the Architect . . . and any of their Subcontractors . . . *for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article or any other property insurance applicable to the Work,* except such rights as they may have to the proceeds of such insurance held by the Owner as fiduciary but only to the extent of actual recovery of insurance proceeds under or pursuant to property insurance applicable to the Work.

(Emphasis added).

Exhibit B to the contract's *Supplementary Conditions* entitled *Insurance Addendum*, required HCB and its subcontractors to protect UT's interests by purchasing worker's compensation insurance, commercial general liability insurance, automobile liability insurance and umbrella excess liability insurance. The *Supplementary Conditions* further provided that all insurance policies "in any way related to the Work . . . that are secured and maintained by [HCB] and all tiers of Subcontractor, shall contain

---

[2]Throughout the remainder of this opinion we will refer to this contractual provision simply as the "waiver clause."

the waiver contained in Paragraph 11.2.1.6 of the Conditions of the Contract" and "name [UT] as an additional insured."

UT subsequently obtained property insurance on a "Builder's Risk Declaration" from Fireman's Fund Insurance with a deductible of $5,000 and policy limits of $5,800,000. The policy insured against "risks of direct physical loss of damage from External causes" and expressly excluded losses due to "[d]elay, or any loss of market for the covered property that occurs from the interruption of business; or any consequential loss that is beyond the direct physical loss of the covered property."

**Barker's Subcontract**

In March 2007, HCB entered into a subcontract with Barker to complete the roof, vinyl siding and flashing at UT's clubhouse for a contract price of $293,467. The subcontract required Barker to obtain a commercial general liability insurance policy with a limit of not less than $1,000,000 each occurrence with a $2,000,000 aggregate and include UT as an insured. The subcontract also provided that UT or HCB would provide builders risk insurance for the entire Project, insuring against risks of direct physical loss or damage to materials. In accordance with the UT/HCB contract, Barker waived his right to subrogation against UT, HCB, "and any party as required in the General Contract, for damages caused by fire or other causes of loss to the extent covered by the builders risk insurance."

The subcontract also contained two indemnification provisions whereby Barker agreed to "indemnify, defend and save Contractor and Owner harmless from any liability for all claims, causes of action, losses, costs, expenses, damages, liabilities and

5

judgments" due to any delay in performance or Barker's failure to properly pursue the subcontract work or comply with the terms of the subcontract. Barker also agreed to indemnify UT and HCB against all claims relating to his performance, or lack thereof, arising from the subcontract work.

Before Barker completed performance under the subcontract, there was a catastrophic fire at UT's clubhouse. A fire marshal's investigation indicated the fire originated in the exterior roof covering, ignited by a "spark, ember or flame," with a contributing factor of high wind. Two of Barker's employees working on the roof when the fire occurred later described to the fire marshal how the fire started in roofing material while they were using a small propane torch to make repairs. UT's estimated loss for the building was $8,000,000 plus $930,000 for its contents. Fireman's Fund Insurance Company provided insurance coverage of $5,800,000 plus $930,000 for the contents. AZIC paid business interruption damages to UT totaling $500,000.

**Proceedings**

In February 2009, AZIC filed a subrogation action against Barker alleging the roofer was negligent in the performance of its work and services at the UT clubhouse resulting in a fire that caused UT's business interruption damages. AZIC's petition disclaimed any representation of UT or authorization to accept service, pleadings or discovery on UT's behalf. AZIC alleged a claim against Barker for negligence and sought UT's business interruption damages plus any deductible paid by UT. Barker subsequently filed a traditional motion for summary judgment asserting UT contractually waived AZIC's subrogation rights per the waiver clause in the UT/HCB contract and

sought severance. AZIC subsequently filed a no-evidence summary judgment motion on Barker's affirmative defense of waiver.

In May 2010, AZIC filed its *Third Amended Original Petition* asserting a contractual indemnity claim under Barker's subcontract with HCB for UT's uninsured losses. Following a hearing, the trial court granted Barker's motion, denied AZIC's motion, and severed the parties from the pending action. This appeal followed.

## Discussion

AZIC asserts its subrogation claim is not barred by the UT/HCB contract because the waiver clause does not mention Barker by name and the indemnification provisions in Barker's subcontract negate the waiver clause's effect. AZIC also contends that UT's business interruption damages are not subject to its subrogation waiver because its damages were not within the scope of the "Work" defined by the UT/HCB contract and its business interruption coverage with UT was not "property insurance" or insurance against "property damages." AZIC next asserts the trial court erred by granting Barker's motion for summary judgment because Barker did not appear for the hearing on AZIC's motion and failed to amend its motion to seek summary judgment on AZIC's claim for contractual indemnity. We disagree.

## I. Standard of Review

We review the trial court's summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). Traditional summary judgment is proper only if the movant establishes there is no genuine issue of material fact and that the

movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). *See Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2003). In our review of a trial court's grant of summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett,* 164 S.W.3d at 661; *Provident Life and Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003).

A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex. 2010); *Sci. Spectrum Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997).[3] The trial court is required to grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. Tex. R. Civ. P. 166a(b). Moreover, if, as here, a trial court's granting of summary judgment does not specify the basis for the trial court's ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex. 2004).

When interpreting a contract,[4] our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract. *In re Service Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (citing *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,*

---

[3]A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005).
[4]The interpretation of an insurance contract is generally subject to the same rules of construction as other contracts. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.,* 297 S.W.3d 248, 252 (Tex. 2009); *Yorkshire Ins. Co., LTD. v. Diatom Drilling Co.*, 280 S.W.3d 278, 282 (Tex.App.—Amarillo 2007, pet. denied).

207 S.W.3d 342, 345 (Tex. 2006)).  To discern this intent, we examine and consider the entire writing in an effort to harmonize and give effect to all the contractual provisions so that none will be rendered meaningless.  *See Brent v. Field,* 275 S.W.3d 611, 617 (Tex.App.—Amarillo 2008, no pet.).  No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument*. Id.*

Where the language is plain and unambiguous, we construe the contract as a matter of law; *Coker v. Coker,* 659 S.W.2d 391, 393 (Tex. 1983), and enforce the contract as made by the parties.  *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 753 (Tex. 2006).  We "cannot make a new contract for them, nor change what they had made under the guise of construction."  *Id.*  However, if the contract's language is susceptible to two or more reasonable interpretations, an ambiguity exists.  *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003).  Whether a contract is ambiguous is a question of law; *id.*, however, a contract is not ambiguous simply because the parties offer conflicting interpretations.  *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 133 (Tex. 2010).  If a contract as written can be given a clear and definite legal meaning, then it is not ambigious as a matter of law.  *Id.*

## II. Subrogation Waiver

Although an insurer acquires a right to be subrogated to any cause of action an insured may have against the offending party upon payment of the loss, the insurer's right to subrogation derives from the insured's right against the offending party and is

9

limited to those rights. *TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.,* 233 S.W.3d 562, 566 (Tex.App.—Dallas 2007, pet. denied) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. John Zisk Co.,* 972 S.W.2d 839, 843 (Tex.App.—Corpus Christi 1998, pet. denied)). An insured, however, can affect a subrogated insurer's rights by releasing claims the insured has against third parties. *Austin Indep. Sch. Dist. v. H. C. Beck Partners, Ltd.,* No. 03-07-00228-CV, 2009 Tex. App. LEXIS 1756, at *7 (Tex.App.—Austin 2009, pet. denied) (mem. op.). While this may or may not be a breach of the insurance contract, *id.,* Paragraph Q of the *Commercial Property Conditions* of AZIC's policy permitted UT to waive its rights against another party without restricting its coverage if the waiver was executed, as it was here, prior to a covered loss.

The waiver clause here is well known and often used in the construction industry. *See TX. C.C., Inc.,* 233 S.W.3d 562, 565 (waiver of subrogation commonly used in construction industry). In its brief, AZIC acknowledges that the waiver clause is the standard clause recommended by the American Institute of Architects; *see TX. C.C., Inc.,* 233 S.W.3d at 565; *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.,* 75 S.W.3d 6, 9 (Tex.App.—San Antonio 2003, no pet.); *Walker Eng'g, Inc. v. Bracebridge Corp.,* 102 S.W.3d 837, 838 (Tex.App.—Dallas 2003, pet. denied), that has been in use for at least twenty years. *See, e.g., E.C. Long v. Brennan's of Atlanta, Inc.,* 148 Ga. App. 796, 252 S.E.2d 642, 645-46 (Ga. Ct. App. 1979).

The waiver clause provided that UT waived all rights against HCB and Barker for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to the UT/HCB contract "or any other property insurance applicable

10

to the Work." The UT/HCB contract provided that UT would purchase property insurance upon the entire Work at the site to the full insurable value thereof and would include the interests of UT, HCB, and Barker in the Project and insure against the perils of fire. "A review of the Contract [the construction contract between the Owner and the General Contractor containing the waiver of subrogation clause] and applicable case law interpreting similar AIA contract provisions reveals the parties agreed [the Owner's] property coverage would protect all parties from property loss." *Walker Eng'g, Inc.,* 102 S.W.3d at 840. Courts reviewing this allocation of risks and the waiver of subrogation provision have concluded the purpose of these provisions is to eliminate the need for lawsuits by protecting all contracting parties from property loss by way of the owner's property insurance. *Id.* at 841.

Where a waiver clause identical to the UT/HCB contract was upheld under similar circumstances, the court stated as follows:

> A waiver of subrogation clause is a risk-shifting provision premised upon the recognition that it is economically inefficient for parties to a contract to insure against the same risk. [Citation omitted]. A subrogation waiver encourages the parties to anticipate the risks and to procure insurance covering those risks and also facilitates and preserves economic relations and activity. [Citation omitted]. Because a property owner can generally acquire insurance to protect property against fire and other perils, in the context of a construction contract, the waiver of subrogation clause shifts the ultimate risk of loss resulting from such perils to the owner to the extent damages are covered by insurance. [Citation omitted]. The intent is to avoid disruption during construction and provide certainty and eliminate litigation by having the contracting parties look only to the owner's insurance for protection in the event of loss resulting from fire or other perils. [Citation omitted]. In other words, a waiver of subrogation clause substitutes the protection of insurance for the uncertain and expensive protection of liability litigation. [Citation omitted].

11

*TX. C.C., Inc.,* 233 S.W.3d at 567-68. *See Walker Eng'g,* 102 S.W.3d at 842; *Trinity Universal Ins. Co.,* 75 S.W.3d at 13; *Temple Eastex, Inc. v. Old Orchard Creek Partners,* 848 S.W.2d 724, 731 (Tex.App.—Dallas 1992, writ denied).

Further, the waiver clause applies whether the owner purchased the property insurance used to pay the loss before executing the construction contract or afterwards. *See TX. C.C., Inc.,* 233 S.W.3d at 571. As long as the owner's property insurance covers the damages to the structure, whether completed or not, the waiver applies. *Id.* This is consistent with the plain meaning of "other property insurance applicable to the Work," i.e., property insurance other than that required to be purchased by the owner under the construction contract. *Id.*

Given the plain meaning of the phrase "other property insurance applicable to the Work," as well as the lengthy period of time this standard AIA clause has been in use, and its ultimate purpose; *see Frost Nat'l Bank,* 165 S.W.3d at 312 (contracts are construed "from a utilitarian standpoint, bearing in mind the particular business activity," while avoiding unreasonable constructions), we conclude the parties intended claims against HCB and its subcontractors (and resultantly any subrogation claims) be waived if UT had already purchased, or later obtained property insurance, that otherwise covered any damage to UT's clubhouse resulting from fire and/or other perils. *See Trinity Universal Ins. Co.,* 75 S.W.3d at 13 (scope of a waiver provision in a standard AIA contract is determined by whether the owner's policy provided coverage for the losses arising from the damage to the property). Because AZIC's policy covered damages resulting from the destruction of UT's property, we conclude that UT waived all rights against Barker for damages caused by the fire, and, because AZIC's rights

were limited by UT's rights, the trial court properly held that AZIC's subrogation claim was barred as a matter of law. *See TX. C.C., Inc.,* 233 S.W.3d at 571 ("as long as property insurance cover[s] the damages to the structure, . . . the waiver applies"). *See also Trinity Universal Ins. Co.,* 75 S.W.3d at 13.

## A. Third Party Beneficiary

AZIC correctly points out that, generally, only parties to a contract have the right to complain of its breach; *Carson Energy v. Riverway Bank*, 100 S.W.3d 591, 600 (Tex.App.—Texarkana 2003, pet. denied), and a presumption exists against conferring third-party beneficiary status on non-contracting parties. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). An exception exists, however, when one who is not a party to the contract shows that the contract was actually made for his or her benefit and that the contracting parties intended that he or she benefit by it. *Id.*

Here, the inclusion of the word "sub-contractor" in the waiver clause indicates that "a considerable depth of parties was contemplated and that the waiver was not meant to be limited only to those who contracted directly with the owner and prime contractor." *Temple Eastex, Inc.,* 848 S.W.2d at 730 (citing *Crow-Williams, I v. Federal Pac. Elec. Co.,* 683 S.W.2d 523, 524 (Tex.App.—Dallas 1984, no writ)). The language, *"[t]he Owner and Contractor waive all rights against each other and the Architect, Architect's consultants, separate contractors, and any of their Subcontractors, sub-Subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article or any other property insurance applicable to the Work,"* in the waiver clause reveals UT's and

13

HCB's intent that the waiver provision extend to subcontractors. *Id.* Therefore, Barker, as HCB's subcontractor, is entitled to benefit from the waiver provision as a third-party beneficiary and may rely on, and enforce, the waiver provision.

## B.    Indemnification

AZIC contends the indemnification clause in Barker's subcontract required Barker to indemnify UT for losses it sustained due to the fire despite the waiver clause. Under the general indemnity clause in Section 7(a) of the subcontract, Barker agreed to indemnify UT against all claims, causes of action, and damages arising out of performance of the subcontract.[5]

Because Barker's subcontract defines the "Contract Documents" to include not only the subcontract but also the UT/HCB contract, we cannot look at the contested clauses in a vacuum but must read them in the context of the entire contracts. *In re Service Corp. Int'l,* 355 S.W.3d at 661; *Brent,* 275 S.W.3d at 617. *See Tribble & Stephens Co. v. RGM Constructors, L.P.,* 154 S.W.3d 639, 663 (Tex.App.—Houston [14th Dist.] 2004, pet. denied) ("When a document is incorporated into another by reference, both instruments must be read and construed together.") Further, in construing their provisions, we must avoid an interpretation that renders any of the contract provisions meaningless. *In re Service Corp. Int'l,* 355 S.W.3d at 661.

---

[5]The indemnification clause in Section 6 of the subcontract is not a general liability indemnification clause but expressly pertains to claims or losses incurred due to delay in Barker's performance of the subcontract work as directed by HCB or in accordance with the subcontract's terms due to inadequate staffing; delay in preparation, procurement or purchasing; correction of defective work; sub-subcontractor delay, labor issues, and insolvency. As such, we find Section 6 does not modify the waiver clause pertaining to property insurance.

The waiver clause is contained in Article 11 of the UT/HCB contract entitled "*Insurance and Bonds*" and it details the insurance UT, as owner, is obligated to supply. The property insurance provision requires UT to purchase and maintain a builder's all-risk policy in the full amount of the contract sum. UT's property insurance is also required to include its interests *as well as* the interests of HCB and Barker. The waiver clause expressly applies to damages caused by fire "to the extent covered by [the builder's risk policy required by the] Article or *any* other property insurance applicable to the Work." (Emphasis added).

Section 7(a) of the subcontract entitled "Indemnification," on the other hand, does not reference the waiver clause or mention any specific type of damages or insurance to which it might apply. Section 8 of the subcontract entitled "Insurance," however, lists all the types of insurance policies for which Barker is responsible for purchasing, i.e., compensation and third-party liability policies such as general liability insurance, business auto liability insurance, and workers' compensation insurance. The sole reference to property insurance in Section 8 addresses UT's responsibility under the UT/HCB contract to purchase builder's risk insurance and also contains a waiver of subrogation that is similar to, and required by, the UT/HCB contract.[6]

A reasonable interpretation of the subcontract's indemnification clause(s) that is in harmony with UT's property insurance procurement requirement and waiver clause is that the subcontract's general indemnification clause refers to compensation and liability losses not covered by property insurance. This interpretation is consistent with the

---

[6]Barker's waiver in Section 8(g) of the subcontract states: "Subcontractor waives its right of subrogation against Owner, Contractor, . . . and any other party as required by the General Contract, for damages caused by fire or other causes of loss to the extent covered by the builders risk insurance."

parties' intent, as manifested by the property insurance requirement and waiver clause, i.e., to shift the risk of each other's loss to the insurer to the extent the loss is covered by the owner's property insurance. To the extent the loss is for compensation and liability to third parties, the indemnification clause shifts the loss from UT, as owner of the property, to Barker. Moreover, in light of Texas's history of enforcement of the waiver clause; *TX C.C., Inc.*, 233 S.W.3d at 571; *Walker Eng'g, Inc.,* 102 S.W.3d at 843-44; *Trinity Universal Ins. Co.,* 75 S.W.3d at 841-43; *Temple Eastex, Inc.*, 848 S.W.2d at 730-31, which has been used extensively in the construction industry nationwide for many years, a reasonable person would assume that if the parties wished to nullify it, they would have amended the text of the waiver itself, not included it at all, or included a statement of nullification that referred to it specifically in either or both contracts.

Accordingly, we hold that the indemnification clause(s) in Barker's subcontract do not modify, or conflict with, the waiver clause. As a result, AZIC's subrogation claims against Barker are barred as a matter of law by Barker's affirmative defense of waiver of subrogation. The trial court did not err by granting Barker's traditional motion for summary judgment on AZIC's subrogation claim. AZIC's first issue is overruled.

## III. Business Interruption Losses

By its second issue, AZIC asserts that UT's business interruption damages were not subject to the waiver clause because the damages were not within the scope of the "Work" and its policy does not constitute "property insurance." As a corollary, by its

fourth issue, AZIC asserts that neither it nor UT waived their subrogation rights as applied to this case. We disagree.

The waiver clause waived "all rights . . . for damages *caused by fire or other perils* to the extent covered by property insurance . . . applicable to the Work." Texas courts recognize that a majority of jurisdictions interpreting this waiver clause have held that waived claims are not defined by what property is harmed, but by the source of any insurance proceeds paying for the loss. *TX. C.C., Inc.*, 233 S.W.3d at 571.[7] "As long as [the owner's] property insurance cover[s] the damages to the structure, . . . the waiver applies." *Id. See Walker Eng'g,* 102 S.W.3d at 844 (rejecting an insurer's contention that the property insurance policy was not applicable to "the Work", the court held that "to the extent the property damage at issue was covered by [the plaintiff's] insurance, [the plaintiff] waived its right to sue [the contractor"); *Trinity Universal Ins. Co.,* 75 S.W.3d at 13, 15 (court held the scope of the waiver clause in the standard AIA contract was determined by whether the owner's policy provided coverage for losses arising from damage to the property, not whether the injury was to "Work" or "non-Work.") Neither party disputes the fact that UT's business interruption damages were *caused* by the *fire* and AZIC's policy covered those damages. Thus, we find AZIC's

---

[7]Under the majority approach, no distinction is drawn between "Work" and "non-Work," but instead, the scope of the waiver is limited to the proceeds of the insurance provided under the contract between the owner and contractor whether the property owner chooses to rely on existing insurance in place at the time of construction or purchase insurance after entering into a construction contract. *See TX. C.C., Inc.*, 233 S.W.3d at 564 (owner acquired policy after entering into construction contract); *Trinity Universal Ins. Co.,* 75 S.W.3d at 8 (owner acquired policy before entering into construction contract). Moreover, that, here, there were two property insurance policies—AZIC's policy, entered into prior to the UT/HCB contract, and Fireman Fund's policy entered into after the construction contract was consummated—is of no moment. *See Walker Eng'g,* 102 S.W.3d at 838-844. In *Walker*, although the owner had purchased a separate builder's risk policy insuring the "Work" in accordance with the contract in addition to existing property insurance, the scope of the waiver of subrogation was not limited to the builder's risk policy purchased pursuant to the contract. *Id.* at 844. By agreeing to the waiver of subrogation clause, the parties agreed that they would all be "protected from property loss under the owner's insurance," regardless whether it was the policy required by the contract or other property insurance. *Id.*

policy was "applicable" to the Project at the address it insured, 2200 University Club Drive, Austin, Texas.

We also find that UT's business interruption losses were a component of the loss suffered by UT due to the fire and AZIC's business interruption coverage was a part of UT's "property insurance" coverage on the clubhouse. The interruption of an owner's business is a proper element of *property* damages. *See Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.,* 74 S.W.3d 486, 496-97 (Tex.App.—Texarkana 2002, pet. denied) ("[E]ven if a plaintiff is not physically deprived of the property, if the injury causes the property to be unfit for the purpose for which the plaintiff had used or had intended to use it, loss of use may be an available remedy.") *See also Berry Contracting, Inc. v. Coastal States Petrochemical Co.,* 635 S.W.2d 759, 761 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Further, AZIC's *Business Income Coverage Form* is listed under the "PROPERTY PORTFOLIO PROTECTION FORMS AND ENDORSEMENTS" of AZIC's policy and *Commercial Property Coverage Part Declarations* for Premises #1, i.e., UT's clubhouse. The *Business Income Coverage Form* also insured UT's loss from business interruption *only* if the loss was "*caused by direct physical loss or damages to property at a 'premises.'*" (Emphasis added). Thus, although AZIC's policy contained both general liability coverage and property coverage, we find that AZIC's business income coverage represented property insurance for losses caused by fire damage to UT's clubhouse.

Our finding is compatible with the notion that property insurance policies are "intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster"; *Highlands Ins. Co. v. The City of Galveston,* 721 S.W.2d 469, 471

(Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (quoting 4 J. Appleman, Insurance Law & Practice § 2107 (rev. 1969)), while liability policies "insure against loss arising out of legal liability, usually based upon *the assured's* negligence." *Id.* (Emphasis added). Furthermore, "[p]roperty loss coverage is typically under a first-party insurance policy [as here] while tort liability coverage is under a third-party policy." *Warrilow v. Norrell,* No. 13-88-437-CV, 1990 Tex. App. LEXIS 863, at *2-5 (Tex.App.— Corpus Christi 2009, writ denied).

In discussing the differences between property and liability insurance, the *Warrilow* court stated the following:

> Coverage in a property policy is commonly provided by reference to causation, such as 'loss caused by . . ." certain enumerated forces. [Citation omitted]. It is precisely these physical forces that bring about the loss. [Citation omitted]. Frequently, as in the cases cited to us by Warrilow, *property* losses occur from more than one legally significant physical force: poultry house destroyed by wind and snow in *McKillip;* home rendered uninhabitable by contamination and an exterminator's negligence in *Auten*; and building damaged by rain and wind in *Matchoolian.* In Texas, if one force is covered and one force is excluded, the insured must show that the property damage was caused solely by the insured force, or he must separate the damage caused by the insured peril from that caused by the excluded peril. [Citation omitted]. The coverage analysis in the property insurance context examines the relationship between perils, those that are covered under the policy and those that are excluded, focusing on the exclusions that limit loss coverage. [Citation omitted].

*Id.* at *3. (Emphasis supplied).

Given the plain meaning of the phrase "other property insurance applicable to the Work," we conclude the parties intended subrogation claims to be waived if UT obtained, or had existing, property insurance that covered any damages to the clubhouse resulting from *fire and/or other perils*. Because AZIC's policy covered

19

damages resulting from the destruction of the clubhouse by fire, we conclude UT waived all rights against Barker for damages caused by the fire and, because AZIC's rights were limited to UT's rights, AZIC's subrogation claim is barred as a matter of law. *See TX. C.C., Inc.,* 233 S.W.3d at 571. Issue two is overruled and issue four is pretermitted. *See* Tex. R. App. P. 47.1.

## IV. UT's Uninsured Losses

By its third issue, AZIC next contends that, even if the waiver clause applies to the $500,000 in damages reimbursed by AZIC, the waiver clause does not waive AZIC's claim for UT's uninsured losses or deductible.

AZIC's policy requires that, "[i]f any person or organization to or for whom we make payment under this Commercial Property Coverage Part has rights to recover damages from another, those rights are transferred to us *to the extent of our payment.*" As a general rule, "'subrogation gives indemnity and no more.'" *American Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480, 485 (Tex. 1992) (Hecht, J., concurring) (quoting *Phipps v. Fuqua,* 32 S.W.2d 660, 663 (Tex.Civ.App.—Amarillo 1930, writ ref'd)). *See Interfirst Bank Dallas v. United States Fidelity & Guar. Co.,* 774 S.W.2d 391, 399 (Tex.App.—Dallas 1989, writ denied) (subrogee limited to recovery of amount paid); *McAllen State Bank v. Linbeck Constr. Corp.,* 695 S.W.2d 10, 24 n.5 (Tex.App.— Corpus Christi 1985, writ ref'd n.r.e.) (under both law and the parties' agreement, subrogee subrogated only to the extent of its payment).

Thus, AZIC's subrogation rights are limited to the amount of UT's losses paid by AZIC up to the policy limits. That AZIC's policy makes provisions for a distribution to UT

20

*if* there is a recovery as a result of subrogation proceedings arising out of a covered loss does not confer on AZIC the ability to expand *its* subrogation rights. *See McAllen State Bank,* 695 S.W.2d at 24 n.5. There is no evidence of record that UT was a party to the action below, assigned any cause of action, or paid any deductible to AZIC. To the contrary, AZIC's *Third Amended Original Petition* expressly states that AZIC "does not represent [UT] and is not authorized to accept service, pleadings or discovery on its behalf." AZIC's third issue is overruled.

## IV. Breach of Contract

Finally, by its fifth issue, AZIC asserts the trial court erred by disposing of its claims for breach of contract. Prior to the court's order granting summary judgment in Barker's favor, AZIC amended its complaint to assert claims for breach of contract, i.e., Barker breached its subcontract with HCB by failing to indemnify UT, and Barker did not amend its summary judgment motion to include those "newly" asserted claims. This failure to amend, however, is not fatal to Barker's position that the trial court had the authority to grant summary judgment as to those claims. "In a nod to reality, summary judgment may be properly granted on later-pleaded causes of action if the grounds actually asserted show that the plaintiff could not recover on the later-pleaded cause of action." *See Owens v. McLeroy, Litzler, Rutherford, Bauer & Friday, P.C.,* 235 S.W.3d 388, 391 (Tex.App.—Texarkana 2007, no pet.) (citing *Ortiz v. Collins,* 203 S.W.3d 152, 162 (Tex.App.—Houston [14th Dist.] 2006, no pet.)). "Even when a later-filed claim is involved, if the motion for summary judgment is sufficiently broad to encompass that claim, then the movant need not amend his motion." *Zarzana v. Ashley,* 218 S.W.3d 152, 161 (Tex.App.—Houston [14th Dist.] 2007, no pet.). Based on the arguments set

21

forth hereinabove, Barker's affirmative defense of waiver clearly applies to all AZIC's theories of recovery, including its breach of contract claim asserting UT's rights, if any, to indemnity under the subcontract.  AZIC's fifth issue is overruled.

## Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice

22