**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 12, 2025**

# In the Court of Appeals of Georgia

A24A1646. CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO POLICY NO. AMR-64794 et al v. SRNG, LLC et al.

PADGETT, Judge.

In this subrogation action, several insurance companies (the "Insurance Parties")[1] sued SRNG LLC ("SRNG") and A&H Renovacion Services LLC ("A&H"),[2] seeking to recover funds paid to indemnify their insured for losses arising

---

[1] The plaintiff-appellants in this case are Certain Underwriters at Lloyds, London, Subscribing to Policy No. AMR-64794, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, International Insurance Company of Hannover, SE, and Old Republic Union Insurance Company.

[2] The defendant-appellees in this case are SRNG LLC d/b/a Superior Renovation Group of N GA a/k/a Superior Renovations of North Georgia and A&H Renovacion Services LLC, d/b/a A&H Renovation Services LLC, a/k/a AH

from a fire at an apartment complex. SRNG and A&H, who had done renovation work at the complex, moved for summary judgment, arguing that the renovation contract's waiver of subrogation provision barred the Insurance Parties from asserting claims against them for losses arising from the fire. The trial court agreed and granted the motion. For the reasons that follow, we affirm.

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *In re Estate of Henry*, 366 Ga. App. 638, 639 (883 SE2d 855) (2023) (citation and punctuation omitted). "Furthermore, if summary judgment is granted, it enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that the requirements of OCGA § 9-11-56 (c) have been met." Id. (footnote omitted). "In conducting this de novo review, we are charged with viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant." Id. at 639-640 (citation and punctuation omitted).

_____

Renovation Services LLC.

I. *Facts and procedural history*

*The contracts*

So viewed, the record shows that Cobblestone Multifamily Partners, LLC ("Cobblestone") owns an apartment complex in Savannah, Georgia. Cobblestone hired SRNG, a general contractor, to renovate the exterior of the apartment complex (the "Project"). In connection with the Project, Cobblestone and SRNG executed an AIA[3] "Standard Form of Agreement Between Owner and Contractor"[4] (the "Contract").

Section 7.3 of the Contract defined "Work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project." The Contract indicated that SRNG would do exterior lighting work as a part of the Work, and in November 2018, SRNG subcontracted with A&H for A&H to remove and replace 220 exterior light fixtures.

---

[3] AIA stands for the American Institute of Architects.

[4] The form contract is AIA Document A107-2007.

Section 17.3.1 of the Contract required Cobblestone to purchase and maintain property insurance. Specifically, Section 17.3.1 states in part:

> Unless otherwise provided, **the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance on an "all-risk" or equivalent policy form**, including builder's risk, in the amount of the initial Contract Sum, plus the value of subsequent modifications and cost of materials supplied and installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. . . . . (emphasis added).

Section 17.3.3 of the Contract contains a waiver provision, which states:

> The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 12, if any, and any of their subcontractors, sub-subcontractors, agents and employees **for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to Section 17.3 or other property insurance applicable to the Work**, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 12, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally

4

required for validity, similar waivers each in favor of other parties enumerated herein. **The policies shall provide such waivers of subrogation by endorsement or otherwise.** A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged. (emphasis added).

Additionally, Cobblestone and SRNG further agreed to waive claims against each other for consequential damages arising out of or relating to the Contract.

Cobblestone purchased an insurance policy (the "Policy") from the Insurance Parties, which insured all of the buildings in the apartment complex against all risks of direct physical loss or damage, including loss or damage by fire. The Policy contains an express waiver of subrogation, which provides that the Insurance Parties "shall not acquire any rights of recovery which [Cobblestone] has expressly waived in writing prior to loss . . . ."

*The fire and this lawsuit*

In October 2019, a fire destroyed one of the apartment complex's buildings.[5] The Policy provided coverage for property damage caused by the fire, and the Insurance Parties were or will be required to indemnify Cobblestone in the amount of $3,289,268 for covered losses arising from the fire. In October 2022, the Insurance Parties filed the instant subrogation action against SRNG and A&H, alleging that because the Insurance Parties indemnified Cobblestone for losses arising from the fire, they are subrogated to Cobblestone's rights, claims, and causes of action against all parties responsible for the fire. Specifically, the Insurance Parties asserted claims against SRNG for breach of contract and against SRNG and A&H for negligence.

SRNG and A&H filed motions for summary judgment, arguing that the Insurance Parties' subrogation action fails as a matter of law because Cobblestone had waived in the Contract all rights to assert claims against SRNG and A&H for insured losses arising from the fire, including all rights of subrogation, and the insurance Policy also contains an express waiver of subrogation. After a hearing, the trial court granted the motions for summary judgment. Specifically, the trial court found that the

---

[5] Although not directly relevant to this appeal, the Insurance Parties allege that the fire was caused by the improper installation of an exterior light fixture by A&H. SRNG and A&H dispute this allegation.

relevant provisions of the Contract were clear and unambiguous, evidencing the intention of the parties to require Cobblestone to obtain "all-risk" property insurance comprising the total value of the entire Project, to look to Cobblestone's "all-risk" property insurance policy in the event of a fire loss, and to waive all claims, including subrogation claims, against each other and their subcontractors to the extent the damages are covered by Cobblestone's Policy. The trial court also found that the waiver of subrogation in the Policy was clear and unambiguous in its statement that "the [Insurance Parties] shall not acquire any rights of recovery which [Cobblestone] has expressly waived in writing prior to loss." The trial court rejected the Insurance Parties' argument that the waiver of rights provision in Section 17.3.3 of the Contract was limited only to claims for fire damage to the Work performed by SRNG and did not apply to claims for fire damage to non-Work portions of the building.

II. *This appeal*

The Insurance Parties appeal, arguing that the trial court erred in interpreting the Contract when granting summary judgment to SRNG and A&H and also in barring the Insurance Parties from seeking available damages.

7

1. First, in several related enumerations of error, the Insurance Parties argue that the trial court erred in interpreting the Contract. We disagree.

"The cardinal rule of contract construction is to ascertain the intention of the parties, as set out in the language of the contract." *Overlook Gardens Properties v. Orix, USA*, 366 Ga. App. 820, 823 (1) (a) (884 SE2d 433) (2023) (citation and punctuation omitted).

> Contract interpretation is guided by three steps: First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Lambert v. DMRT, LLC*, 370 Ga. App. 103, 109 (1) (b) (i) (894 SE2d 456) (2023) (citation and punctuation omitted).

Here, Section 17.3.1 of the Contract requires Cobblestone to obtain "all-risk" insurance, and Section 17.3.3's waiver provision expressly "waive[s] all rights . . . for damages caused by fire or other causes of loss to the extent covered by property

insurance obtained pursuant to Section 17.3 or other property insurance applicable to the Work[.]" The trial court properly found that the relevant portions of the Contract are clear and unambiguous, evidencing the intention of the parties to require Cobblestone to obtain "all-risk" property insurance comprising the total value of the entire Project, to look to Cobblestone's "all-risk" property insurance in the event of a fire loss, and to waive all claims, including subrogation claims, against each other and their subcontractors to the extent the damages are covered by Cobblestone's property insurance.

The Insurance Parties contend that the plain meaning of the waiver of subrogation in Section 17.3.3 of the Contract indicates that it was only intended to apply to "the Work," as both types of insurance described in that section, namely, the "property insurance obtained pursuant to Section 17.3" – the all-risk property insurance – and "other property insurance applicable to the Work," apply to the Work specifically. We disagree. As set forth in Section 17.3.1, Cobblestone was required to maintain "all-risk" property insurance "comprising [the] total value for the entire Project," including the initial Contract Sum,[6] in addition to the "value of

---

[6] The Contract Sum here was a stipulated sum of $310,838, the amount Cobblestone was required to pay SRNG for its performance of the Contract.

subsequent modifications and cost of materials supplied and installed by others." Not just, as the Insurance Parties argue, insurance on the Work.

We further agree with the trial court that the waiver of subrogation in the Insurance Parties' Policy is equally clear and unambiguous in its statement that "the [Insurance Parties] shall not acquire any rights of recovery which [Cobblestone] has expressly waived in writing prior to loss."

We also find that the trial court correctly relied on our opinion in *E. C. Long, Inc. v. Brennan's of Atlanta, Inc.*, 148 Ga. App. 796 (252 SE2d 642) (1979), in which we reversed the trial court's grant of partial summary judgment in favor of the plaintiff/property owner. In that case, the property owner hired a contractor to perform renovation work on a mansion, and the parties executed an AIA "Standard Form of Agreement Between Owner and Contractor." Id. at 797-798 (1). The relevant contract provisions were:

> 11.3 Property Insurance.
> 11.3.1 Unless otherwise provided, the Owner . . . [s]hall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interest of the Owner, the Contractor, Subcontractors and Sub-subcontractors [i]n the

Work and shall insure [a]gainst the perils of Fire, Extended Coverage, Vandalism and Malicious Mischief.

. . .

1.1.3 The Work. The term Work includes all labor necessary to produce the construction required by the Contract Documents, and all materials and equipment incorporated or to be incorporated in such construction.

Id. The contract also included a waiver provision, which stated:

11.3.6 The Owner and Contractor waive all rights against each other for damages caused by fire or other peril [t]o the extent covered by insurance provided under this Paragraph 11.3 . . .

Id. at 800 (1) (b). Before the renovation began, the contractor's subcontractor uprooted a tree, breaking a gas line and resulting in an explosion and fire which destroyed the mansion. Id. at 797. The property owner sued the contractor. Id. The trial court granted the property owner's motion for partial summary judgment. Id. On appeal, we noted that the waiver provision renounced all claims between the parties to the contract "to the extent covered by insurance provided under this Paragraph." Id. at 801 (1) (b). We rejected the property owner's reasoning that because the contract only required insurance for the "work," the property owner's insurance,

11

which covered the work and the mansion, did not waive the property owner's right to damages to the mansion. Id. at 801-802 (1) (b). We noted that this interpretation ignored the plain wording of the waiver clause, which waived "all right [of property owner and contractor] against each other for damages caused by fire or other perils to the extent covered by insurance provided under this Paragraph 11.3[,]" and that the waiver clause did not restrict waiver of damages to "work" but to the proceeds of any insurance provided under Paragraph 11.3. Id. In other words, the contract required a waiver of claims against the other party to the extent the injured party was reimbursed by insurance. Id.

Here, similar to the waiver provision in *E. C. Long*, the waiver was for "damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to Section 17.3 or other property insurance applicable to the Work." Much like in *E. C. Long*, the insurance obtained covered more than just the work site, and in both cases the indemnification was for "damages caused by fire or other causes of loss to the extent covered by property insurance." Like the property owner in *E. C. Long*, the Insurance Parties' reasoning ignores the plain wording of the waiver clause. *E. C. Long*, 148 Ga. App. at 801-802 (1) (b).

12

As the trial court and the parties have recognized, there appears to be a split of authority about whether similar waiver clauses apply to all damages covered by the owner's property insurance policy (the so-called majority approach), or if the waiver is limited to damages done to "the Work" (the so-called minority approach). The Insurance Parties contend that the minority approach is more consistent with Georgia law than the majority approach. We disagree.

First, the majority approach is consistent with our reasoning in *E. C. Long*, and thus, with Georgia law. Second, in particular, the Insurance Parties contend that "[t]o extend the [waiver] provision to apply to the non-Work property, for which [SRNG and A&H] are clearly responsible if damaged, would render entire swaths of the parties' agreement utterly meaningless" and thus would be inconsistent with Georgia's canons of contract construction. We must construe a contract "by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof. And whenever possible, a contract should not be construed in a manner that renders any portion of it meaningless." *DJ Mortgage, LLC v. Synovus Bank*, 325 Ga. App. 382, 389 (2) (a) (i) (A) (II) (750 SE2d 797) (2013) (citations and punctuation omitted).

The Insurance Parties argue that interpreting the waiver provision to apply to Work and non-Work property would render meaningless provisions in the contract requiring SRNG to obtain liability insurance and making SRNG responsible for ensuring that the job site is safe. However, the liability insurance that SRNG is required to obtain under the Contract is for "protection from claims under workers' compensation acts and other employee benefit acts . . . , claims for damages because of bodily injury, including death, and claims for damages, other than to the Work itself, to property . . ." And the Contract required Cobblestone to obtain liability insurance as well. When read in connection with Section 17.3.1, it is clear that these provisions require SRNG and Cobblestone to obtain their own liability insurance for claims other than property damage claims between the parties. Thus, the provisions requiring SRNG and Cobblestone to obtain their own liability insurance are not rendered meaningless by our interpretation of Sections 17.3.1 and Section 17.3.3.

2. In light of Division 1, we do not reach the Insurance Parties' argument that the trial court erred by failing to consider their argument that they are entitled to damages.

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*

14