

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00456-CV
_____

JONES ENERGY, INC. AND JONES ENERGY HOLDINGS, LLC, APPELLANTS

V.

PIMA OIL & GAS, L.L.C., APPELLEE

On Appeal from the 31st District Court
Hemphill County, Texas
Trial Court No. 7263; Honorable Steven R. Emmert, Presiding

April 14, 2020

## OPINION ON REHEARING

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Pending before this court is *Appellee's Motion for Rehearing*, wherein Pima Oil & Gas, L.L.C. contends, in part, that this court should revise its prior opinion so as to not render judgment specifically determining what production intervals are excluded from the scope of Pima's over-riding royalty interest. Remaining convinced as to our prior disposition of the contract construction issue but agreeing with Pima that our prior opinion

may have decided issues upon which there are disputed questions of fact, we withdraw our prior opinion[1] and substitute the following opinion, reversing and rendering in part and reversing and remanding in part.

### INTRODUCTION

This is a contract construction case involving the interpretation of an *Assignment of Overriding Royalty Interest*, dated June 9, 1999, recorded in Volume 508, Page 146, of the Public Records of Hemphill County, between Spring Resources, Inc., as assignor, and Pima Oil & Gas, L.L.C., as assignee.  Pima filed suit against Jones Energy, Inc. and Jones Energy Holdings, L.L.C., Appellants herein, alleging that Jones Energy, Inc., as operator of the Gracie 117-1H well (a horizontal well), had failed to properly account to Pima for its overriding royalty interest ("ORRI") acquired by virtue of that assignment. Following presentation of cross motions for summary judgment, the trial court ruled that (1) Pima's ORRI burdens production (unrestricted) from the Gracie 117-1H well, (2) the "exception language" found in the assignment, upon which Jones based its counter claims, was limited to the vertical wellbores of the Wright 117 Unit well(s) referenced in the assignment (*i.e.*, the exception did not apply to production from the Gracie 117-1H wellbore), (3) Jones breached the assignment by failing to pay Pima overriding royalties on production from the Gracie 117-1H wellbore, and (4) Pima recover judgment against Jones for unpaid overriding royalties in the sum of $103,845.11, prejudgment interest in the sum of $7,840.87, attorney's fees of $140,000.00, conditional appellate attorney's fees of $100,000.00, plus post-judgment interest at the rate of five percent per annum.

---

[1] *See Jones Energy, Inc. and Jones Energy Holdings, L.L.C. v. Pima Oil & Gas, L.L.C.,* No. 07-17-00456-CV, 2020 Tex. App. LEXIS 491 (Tex. App.—Amarillo Jan. 16, 2020, no pet. h.).

By two issues, divided into seven subparts, Jones Energy, Inc. contends the trial court erred by (1) granting Pima's motion for summary judgment and (2) denying its motion for summary judgment. We agree.

### BACKGROUND

On September 9, 1980, Grace H. Hill, individually and as Executrix of the Estate of Charles H. Wright, deceased, as lessor, executed an oil and gas lease in favor of Moody Energy Company, as lessee, covering Section 117, Block 41, H&TC Ry. Co. Survey, Hemphill County, Texas. That lease was recorded at Volume 171, Page 55, of the Public Records of Hemphill County, Texas. On October 1, 1991, Grace H. Hill, individually and as Executrix of the Estate of Charles H. Wright, deceased, as lessor, executed an oil and gas lease in favor of John T. Wright, as lessee, covering the southwest quarter of Section 117, Block 41, H&TC Ry. Co. Survey, Hemphill County, Texas. The October 1991 lease was recorded at Volume 319, Page 184, of the Public Records of Hemphill County, Texas.

Spring acquired its interest in Section 117 by virtue of an assignment recorded on March 31, 1998, recorded at Volume 476, Page 33, of the Public Records of Hemphill County, Texas. At the time of Spring's acquisition of interest, the only producing wellbores on Section 117 were the Gracie 117-1 and the Charles H. Wright 117-1.

Prior to Spring acquiring its interest in Section 117, Pima and Spring had entered into a *Retainer Agreement* whereby Pima agreed to conduct geologic evaluations on acquisition opportunities as requested by Spring for purposes of identifying proven undeveloped locations, behind pipe zones, and other drilling opportunities. In exchange,

3

Spring agreed to assign Pima an ORRI. At the time of the execution of this *Retainer Agreement,* the Charles H. Wright 1-117 well, a vertical well, was producing from the A interval of the Granite Wash formation in the southwest quarter of Section 117. By March 1998, also prior to the execution of the *Retainer Agreement,* a second vertical well, the Gracie 117-1, was producing from multiple intervals in the Big Timber Creed Douglas Sand formation in the northwest quarter of Section 117.

In accordance with the terms of the *Retainer Agreement,* Pima was entitled to an ORRI in Section 117. That ORRI interest was assigned to Pima by virtue of the *Assignment of Overriding Royalty Interest* described above. The override assigned was a "2.50% Overriding Royalty Interest (ORRI) in and to all of Assignors right, title, and interest in the lease(s) described on Exhibit 'A' . . . and to future production from any drilling and/or spacing units contained in and/or described as all or a portion thereof of Section 117, Block 41, H&TC Survey, Hemphill County, Texas (the Unit) or proportionately calculated if the spacing unit covers acreage outside the referenced Section, Block, and Survey."

The assignment further stated:

The assigned ORRI shall extend to and burden the interest of Assignor, its successors and assigns, in 1) the Wright 117 unit well(s) producing on the lands described above at the time of acquisition by the Assignor, *save and except the intervals of the formation(s) open to production in, and only in, the wellbore of the aforementioned well(s)* and 2) any additional leases or interest in leases acquired by Assignor, its successors or assigns covering the Unit or the Leases.

(Emphasis added.)

4

The "lease(s) described on Exhibit 'A'" provided as follows:

WRIGHT 117 UNIT (GRACIE #1-117)
ALL OF SECTION 117, BLK 41, H&TC SURVEY, HEMPHILL COUNTY, TEXAS
SAVE AND EXCEPT ALL RIGHTS ABOVE THE GRANITE WASH (11,000')
IN THE SW/4, CONTAINING 640 ACRES, MORE OR LESS

| | |
|---|---|
| LESSOR: | Grace H. Hill, Individually and as Executrix of the Estate of Charles H. Wright, Deceased |
| LESSEE: | Moody Energy Company |
| LEASE DATE: | September 9, 1980 |
| RECORDING DATA: | Volume 171, Page 55 |
| DESCRIPTION: | All of Section 117, BLK 41, H&TC RR Co. Survey, Hemphill County, Texas |

In July of 2011, subsequent to the execution of the *Retainer Agreement* and the *Assignment of Overriding Royalty Interest*, a new horizontal wellbore was spudded. This wellbore, the Gracie 117-1H, extended through and was completed in the Granite Wash formation underlying the west half of Section 117. It is the production from this horizontal wellbore that forms the basis of Pima's claim that it is entitled to additional compensation as an ORRI.

On August 21, 2015, based on its interpretation of the *Assignment*, Pima notified Jones Energy, Inc. of its claimed interest in production from the Gracie 117-1H well and it demanded payment of overriding royalties allegedly due and owing. When payment was not made, this suit followed. By its claims, Pima sought a declaratory judgment that (1) its ORRI burdened production from the Gracie 117-1H and (2) the counterclaims of Jones Energy, Inc. were invalid. Pima also sought a declaration that the "exception language" found in the assignment was limited to the two vertical wells that were in existence at the time the parties entered into their agreement.

On the other hand, Jones Energy, Inc. took the position that Pima was not entitled to an ORRI because the Gracie 117-1H well was producing from the A interval of the Granite Wash formation—an interval excluded by the terms of the assignment since it was the same interval from which the Charles H. Wright 117-1 well was already producing. Jones Energy, Inc. further alleged that Pima's interpretation of the assignment was contrary to the title opinions issued in 2008 and 2012, by two different attorneys.

In other words, Jones Energy, Inc. contended that production from the horizontal wellbore was excluded from the assignment by virtue of the *save and except* provision in the assignment; whereas, Pima asserted its claim on the basis that, at the time of the acquisition of its assignment interest, the horizontal wellbore in question was not "open to production" from the Gracie 117-1 vertical wellbore and, therefore, it was not excluded. The distinguishing factor between the respective positions being whether the parties to the assignment intended to exclude production from a particular *interval of a formation* or production from a particular *wellbore*.

On November 19, 2015, Pima filed its original petition seeking a declaratory judgment as to its rights under the *Assignment*. Pima also sought recovery of ORRI payments it claims were due and unpaid. Thereafter, in December 2016, Pima filed its *Partial Motion for Traditional Summary Judgment* alleging that it was entitled to an ORRI, by virtue of the *Assignment*, in the lease under which Jones operates the Gracie 117-1H well. Pima claimed that because there were no disputed fact issues it was entitled to a partial summary judgment based upon an interpretation, as a matter of law, of the unambiguous language in the *Assignment*. On February 9, 2017, Jones filed its response which included affidavits from (1) Bryan Garner, (2) Joel R. Hogue, (3) John Irwin, and

6

(4) Shane Brooks.  Pima objected to the consideration of those affidavits on the basis that they were being offered solely for the purpose of supporting an interpretation of certain documents, a matter irrelevant in a proceeding where no party was contending that the documents were ambiguous.  In March 2017, Jones responded to Pima's motion by filing its own *Motion for Partial Summary Judgment.*  Subsequently, the trial court granted Pima's motion to exclude the opinion testimony of Garner, Hogue, Irwin, and Brooks.  It then granted Pima's motion for a partial summary judgment, while at the same time denying Jones's motion for a partial summary judgment.  The judgment was subsequently made final and this appeal followed.

### STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary judgment on the basis of a *de novo* review. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A traditional summary judgment is proper only if the movant establishes there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c).  *See Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2003).  In our review of a trial court's grant of summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *Valence Operating Co.*, 164 S.W.3d at 661; *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Moreover, if, as here, a trial court's order granting summary judgment does not specify the basis for the trial court's ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Joe v. Two Thirty Nine Joint Venture*,

145 S.W.3d 150, 157 (Tex. 2004); *Am. Zurich Ins. Co. v. Barker Roofing, L.P.*, 387 S.W.3d 54, 60 (Tex. App.—Amarillo 2012, no pet.).

When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). "When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should consider the summary judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered." *Canyon Regional Water Authority v. Guadalupe-Blanco River Authority*, 258 S.W.3d 613, 616 (Tex. 2008) (quoting *Texas Workers' Compensation Comm'n v. Patient Advocates of Texas*, 136 S.W.3d 643, 648 (Tex. 2004)). In order to succeed, however, a party must prevail on the strength of its own motion and not on the weakness of the opposing motion.

### APPLICABLE LAW

The construction of an unambiguous instrument, such as the *Assignment of Overriding Royalty Interest* involved in this case, is a question of law for the trial court. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). Accordingly, an appellate court reviews the trial court's decision under a *de novo* standard of review. *Id.* In construing an unambiguous instrument, the primary duty of the court is to ascertain the intention of the parties as expressed within the four corners of the instrument. *Id.* (citing *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)). In our review, we must give the instrument its plain, grammatical meaning unless doing so would *clearly* defeat the

8

parties' intentions. *Thompson*, 94 S.W.3d at 554 (citing *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966)).

Furthermore, we must examine the entire instrument and attempt to harmonize all of its parts, even if different parts of the same instrument appear contradictory or inconsistent. *Thompson*, 94 S.W.3d at 554. This is because we must presume that the parties intended every clause to have some effect. *Id.* That being said, we should not construe an instrument as imposing a special limitation on rights being granted unless the language of the instrument clearly, precisely, and unequivocally expresses that limitation. *Id.* (citing *Fox*, 398 S.W.3d at 92).

### ANALYSIS

Within the rubric of its two basic issues ((1) that the trial court erred in granting Pima's motion for summary judgment and (2) that the trial court erred in denying Jones's motion for summary judgment), Jones breaks its arguments into seven subparts. We will address those subparts in a logical rather than sequential manner.

By its seventh subpart (subpart G), Jones posits the trial court erred in sustaining Pima's evidentiary objections to the affidavits of Garner, Hogue, Irwin, Brooks, and Denise Percival. In analyzing this subpart, we are mindful that an appellate court should review a trial court's decision to admit or exclude summary judgment evidence under an abuse of discretion standard. *Van Adrichem v. Agstar Fin. Servs.*, *FLCA*, No. 07-13-00432-CV, 2015 Tex. App. LEXIS 11734, at *3 (Tex. App.—Amarillo 2015, no pet.) (mem. op.). In initially ruling on Pima's objections, the trial court stated that it was striking the affidavits "insofar as such testimony relates to construction of the subject contract

provisions."[2]  Because the construction of an unambiguous instrument is a matter of law determination, upon which another's opinion would not be binding, we cannot say that the trial court acted unreasonably in sustaining Pima's objections to affidavits designed only to assist the trial court in its construction of such an instrument.  As such, Jones's subpart G is overruled.

By subparts A, B, C, and D, Jones contends the trial court erred in finding Pima's ORRI burdened production from the horizontal wellbore designated as the Gracie 1-117H well, while not finding the contrary.  In that regard, Jones contends the *Retainer Agreement* supports its interpretation (*i.e.*, that production from the Gracie 1-117H well was excluded from the ORRI by the "save and except" clause contained in the *Assignment*) because it contains controlling contractual language clarifying the intent of the parties.  In support of its argument, Jones relies upon an examination of the *Assignment* to argue that paragraph (7) reveals that the parties agreed that the *Retainer Agreement* would control over the *Assignment.*  Paragraph (7) provides as follows:

> This Assignment is *subject to* that certain unrecorded Retainer Agreement dated December 9, 1997, by and between Assignor and Assignee and the obligations under same are superior to and free and clear of any mortgages, production payments, overrides or other encumbrances of any kind or nature created by Assignor after Assignor acquired the Leases.

(Emphasis added).

Therefore, because the ORRI is subject to the provisions of the *Retainer Agreement,* Jones contends Pima's right to an ORRI is limited by paragraph K of that agreement which provides, "[o]n all currently existing Spring acreage where Pima

---

[2] The trial court later struck the affidavits in their entirety.

identifies a drilling prospect or heretofore unidentified behind pipe opportunity, Pima will also be assigned an ORRI or CWI [Carried Working Interest], *exclusive of producing zone(s) in the wellbore(s) of the then existing wells . . . .*"  (Emphasis added).  In other words, Jones contends that by virtue of the exclusion provision Pima is not entitled to an ORRI on production from any *zone*[3] that was already producing when the *Retainer Agreement* entered into*.*  Jones further contends that proper grammatical interpretation of the *Retainer Agreement* supports its interpretation of the ORRI assigned to Pima.  According to Jones, a proper grammatical interpretation of the *Retainer Agreement* indicates that the exclusion provision excluded *zones*, not *wells*, and that the phrase "in the wellbore(s)" was nothing more than a prepositional phrase modifying the noun *zone.*  As such, Jones effectively argues it is "producing intervals of a formation" being excluded from the ORRI, not wells or wellbores, and that the *Assignment's* reference to wellbores is merely the means by which the excluded producing intervals were identified.  We agree.

The subordinating language contained in paragraph 7 of the *Assignment* makes it clear that in the event of a conflict between the two documents, the *Retainer Agreement* would control.  In that regard, as it concerns the nature of the property interest being exchanged by Spring for services to be rendered by Pima, the *Retainer Agreement* provides as follows:

---

[3] The parties have failed to argue a distinction between the terms "intervals of the formation(s)," as used in the *Assignment of Overriding Royalty Interest,* and "zone(s)," as used in the *Retainer Agreement.* To the extent that there is a conflict in meaning between those terms*,* we will defer to the term "interval of the formation," unless otherwise inappropriate, since it is the *Assignment of Overriding Royalty Interest* which is being construed.

On properties acquired by Spring through acquisition of producing properties as described in Paragraph I, Pima will be assigned an ORRI or CWI on any properties where Pima has identified PUD's, BP zones, or other drilling opportunities (ideas), *exclusive of producing zone(s)* in the wellbore(s) of the then existing wells, according to the above Table and Paragraph K.

(Emphasis added).

In this sentence, the noun *zone* is the object of and is introduced by the modifying phrase *exclusive of.* The phrase *in the wellbore(s)* is a prepositional phrase functioning as a modifier of the phrase *producing zone(s).* Therefore, according to this paragraph of the *Retainer Agreement*, Pima's right to an ORRI excluded *zones* (intervals) that were being produced by the then existing wells. Conversely, the trial court erred in finding that the "exception language" found in the *Assignment* did not apply to production from the horizontal well designated the Gracie 1-117H, to the extent, if any, such production was from an interval being produced from the then existing wells. As such, subparts A, B, C, and D are sustained.

By subpart E, Jones contends the trial court erred in finding that it breached the *Assignment* by failing to pay Pima the ORRI due. Because we have found the trial court erred in finding that an ORRI was owed on production from the Gracie 117-1H wellbore, without determining whether such production was from an interval already being produced from the existing wells, we likewise find that the trial court erred in finding a breach of that agreement based on a failure to pay. Subpart E is sustained.

Finally, by subpart F, Jones contends the trial court erred in awarding attorney's fees, interest, and costs of court to Pima. Again, because we have found the trial court erred in finding that an ORRI was owed to Pima based upon production from the Gracie

12

117-1H horizontal wellbore, as opposed to production from an interval not being produced from the then existing wells, we find the trial court erred in awarding a monetary recovery in favor of Pima. Subpart F is sustained.

Based on the above and foregoing, we sustain Jones's two issues—finding the trial court erred in granting Pima's motion for summary judgment and in denying Jones's motion for summary judgment.

### CONCLUSION

We reverse the judgment of the trial court and render judgment declaring that the ORRI granted to Pima by the *Assignment of Overriding Royalty Interest*, dated June 9, 1999, recorded in Volume 508, Page 146, of the Public Records of Hemphill County, Texas, extends to and burdens the interest of Spring Resources, Inc., its successors and assigns, in the "Wright 117 unit well(s)" producing on the lands described therein, at the time of acquisition by Spring Resources, Inc., "*save and except the intervals of the formation(s) open to production in, and only in, the wellbore of the aforementioned well(s)*" any additional leases or interest in leases acquired by Assignor, its successors or assigns covering that Unit or the Leases. We further remand this proceeding to the trial court for a determination of the intervals of the formations that were open to production in the wellbore of the Wright 117 unit well(s), at the time Spring Resource, Inc. acquired its interest. To the extent that the trial court's earlier ruling precluded a determination of whether any of the production from the Gracie 1-117H well was, at the time Spring Resource, Inc. acquired its interest, coming from an interval that was open to production in the wellbore of the existing Wright 117 unit wells, we remand this matter to the trial court for further proceedings consistent with this opinion. Subject to any further

13

proceedings and rulings by the trial court, we also render a "take nothing" judgment in favor of Jones on Pima's action for monetary relief.


Patrick A. Pirtle
Justice