ATTORNEYS FOR APPELLANT
Julia Blackwell Gelinas
Maggie L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE TETON CORPORATION
Richard T. Mullineaux
Crystal G. Rowe
Dustin L. Howard
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEYS FOR APPELLEE INNOVATIVE ROOFING
SOLUTIONS, INC.
Scott L. Tyler
Eric T. Eberwine
Waters, Tyler, Hofmann & Scott, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEES GUTAPFEL ROOFING,
INC. AND DANIEL L. GUTAPFEL
Grover B. Davis
James T. Flanigan
McClure McClure & Davis
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

**FILED**
May 13 2015, 2:06 pm

CLERK
of the supreme court,
court of appeals and
tax court

_____

No. 72S04-1410-CT-642

THE BOARD OF COMMISSIONERS
OF THE COUNTY OF JEFFERSON,

*Appellant (Plaintiff),*

v.

TETON CORPORATION, INNOVATIVE ROOFING
SOLUTIONS, INC., GUTAPFEL ROOFING, INC., AND
DANIEL L. GUTAPFEL,

*Appellees (Defendants).*

_____

Appeal from the Scott Circuit Court, No. 72C01-1108-CT-15
The Honorable Roger L. Duvall, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 72A04-1302-CT-55

_____

**May 13, 2015**

**Rush, Chief Justice.**

Property owners and contractors routinely agree to waive subrogation rights for damages. Here, the parties did so by incorporating an American Institute of Architects ("AIA") standard form into their contract for the repair of the Jefferson County courthouse. While the repairs were underway, a fire severely damaged the courthouse. The AIA contract waives subrogation rights for all "damages caused by fire or other perils to the extent covered by property insurance." The parties now dispute the meaning of the subrogation waiver. Owner seeks to subrogate all damages *unrelated* to repairs, arguing that the subrogation waiver applies only to construction-related damages. Contractor argues that all damages covered by Owner's property insurance policy are waived. Both parties cite other states' precedent to support their position, and the decision below created a split of authority in our own Court of Appeals. We granted transfer in this matter of first impression to establish the Indiana approach.

We hold the plain meaning of the contract defines the scope of the waiver based on the extent and source of *coverage*, not the nature of the *property damaged*. Accordingly, we agree with the majority of jurisdictions that have applied this plain meaning to bar recovery for all damages covered by the same property insurance policy used to cover construction-related damages—commonly referred to as the "any insurance" approach. Because Contractors have shown that Owner's insurance covered all damages, the subrogation waiver applies to bar Owner's claim. Accordingly, we affirm summary judgment in favor of Contractors.

## Standard of Review

On summary judgment, our appellate review is de novo. Schwartz v. Heeter, 994 N.E.2d 1102, 1105 (Ind. 2013). The meaning of the subrogation waiver is "particularly well-suited for de novo appellate review" because, like all matters of contract interpretation, it presents a pure question of law. Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co., 983 N.E.2d 574, 577 (Ind. 2013). Here, that question is whether we should interpret the subrogation waiver according to either (1) the "Work versus non-Work" approach, under which the Owner waives subrogation only for losses related to "the Work" (i.e., the contracted-for construction and services); or (2) the "any insurance" approach, under which the Owner waives subrogation for all losses covered by Owner's insurance policy "applicable to the Work," regardless of whether the damage was to work or non-work property.

**Facts and Procedural History**

On May 20, 2009, a fire destroyed much of the Jefferson County courthouse, located in Madison, Indiana. Jefferson County alleged that the fire began while Daniel Gutapfel—a roofing subcontractor—was soldering copper downspouts near the wood frame of the courthouse as part of a four-phase plan to remodel and renovate the entire building. The damages far exceeded the remodeling costs, but were fully covered by Jefferson County's property insurer, which paid Jefferson County under its policy after the fire. The parties now contest whose insurance company should cover the loss.

Seven months earlier, Jefferson County awarded the first phase of its courthouse remodeling plan to Teton Corporation, and both parties signed the contract on October 29, 2008. The contract was for repairs to the courthouse roof, flashing, gutters, and downspouts at a price of $87,280.00. Teton subcontracted to Innovative Roofing Solutions, Inc., which sub-subcontracted to Gutapfel Roofing, Inc.—owned and operated by Daniel Gutapfel. Jefferson County's contract with Teton incorporated a 1987 version of the AIA "Standard Form of Agreement Between the Owner and Contractor" (A101-1987) and "General Conditions of the Contract for Construction" (A201-1987) (collectively the "AIA contract").

The AIA contract contains a broad waiver of subrogation provision for all damages covered by *property* insurance:

> **11.3.7 Waivers of Subrogation.** The Owner and Contractor waive all rights . . . for damages caused by fire or other perils *to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work*, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. . . . A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

(Emphasis added.) Jefferson County as Owner is required to obtain the property insurance that triggers the waiver—there is no comparable requirement for Teton as Contractor.[1] The AIA contract also requires each party to obtain its own *liability* insurance,[2] but such insurance has no impact on the subrogation waiver because (as we discuss below) waiver depends on the extent of coverage of *property* insurance, not *liability* insurance. The waiver and the insurance requirements work in tandem to ensure that the parties resolve damages disputes through insurance claims, not lawsuits. Am. Zurich Ins. Co. v. Barker Roofing L.P., 387 S.W.3d 54, 61 (Tex. Ct. App. 2012).

Jefferson County could satisfy its property insurance requirements in one of two ways: either (1) procure a separate policy to cover only the renovations—commonly referred to as "builders-risk insurance"—or (2) rely on its existing "all-risk" property insurance policy to cover the entire courthouse, including the renovations. See ¶¶ 11.3.1, 11.3.1.1; 2 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 5:220 (2002). Jefferson County chose to rely on its existing "all-risk" policy that it maintained with St. Paul Fire and Marine Insurance Company ("St. Paul policy").

---

[1] **11.3.1** Unless otherwise provided, the Owner shall purchase and maintain . . . property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site . . . .

**11.3.1.1** Property insurance shall be on an all-risk policy form . . . .

[2] **11.1.1** The Contractor shall purchase . . . and maintain . . . such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. . . .

. . .

**.5** claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

. . .

**11.2.1** The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance. . . .

After the fire, Jefferson County filed a subrogation claim (presumably on behalf of St. Paul) against Teton, Innovative Roofing, Gutapfel Roofing, and Daniel Gutapfel to recover damages caused to its property outside the scope of the work—that is, property unrelated to repairs to the roofing, flashing, gutters, and downspouts. Jefferson County claimed breach of implied warranty and negligence and/or gross negligence against all defendants, breach of contract against Teton and all subcontractors; and it sought to compel arbitration. All Defendants moved for summary judgment, arguing Jefferson County had waived its claim under the AIA waiver because its St. Paul policy covered all the damages. Jefferson County responded that it had waived subrogation rights only for damages to the work—not non-work property.

The trial court granted final summary judgment for Defendants on all claims and denied Jefferson County's motion for partial summary judgment as moot. It found that Jefferson County had waived subrogation rights for all claims because it had insurance that covered all the damages caused by the fire. Since the trial court found the waiver dispositive, it did not address any of the issues related to Gutapfel's gross negligence or Teton's or Innovative Roofing's vicarious liability. The trial court noted that the scope of its judgment was only "[t]he parties['] [sic] rights and responsibilities under their contract" and not "[t]he nature and cause of th[e] fire . . . ." The trial court also denied Jefferson County's subsequent motion to correct error.

The Court of Appeals affirmed in a split decision. Bd. of Comm'rs. v. Teton Corp., 3 N.E.3d 556 (Ind. Ct. App. 2014). The majority adopted the "any insurance" approach to interpreting the subrogation waiver and held that the waiver barred Jefferson County's claims. Id. at 570–71. Judge Brown dissented, however, reasoning that Indiana should continue its recent trend of applying the "Work versus non-Work" approach and hold that Jefferson County waived claims for only work damages. Id. at 574–75; see Midwestern Indem. Co. v. Sys. Builders, Inc., 801 N.E.2d 661 (Ind. Ct. App. 2004), trans. denied; Allen Cty. Pub. Library v. Shambaugh & Son, L.P., 997 N.E.2d 48 (Ind. Ct. App. 2013). See also Bhd. Mut. Ins. Co. v. Michiana Contracting, Inc., 971 N.E.2d 127 (Ind. Ct. App. 2012). On the gross negligence issue, the majority simply noted in a footnote that "Jefferson County has not designated any evidence that would establish that Gutapfel or the other Appellee contractors were grossly negligent (or acted willfully or wantonly)." Teton Corp., 3 N.E.3d at 571 n.10.

We granted transfer. Ind. Appellate R. 58(A). We summarily affirm the Court of Appeals on the gross negligence issue, id., and now affirm summary judgment in favor of Contractors and against Jefferson County.

## Discussion and Decision

We must decide whether, under the plain meaning of the AIA contract, property owners waive subrogation rights for construction damages by maintaining "all-risk" property insurance policies that cover both their construction-related damages and their entire property. Our Court of Appeals has offered two competing approaches to resolve this question, mirroring a national split of authority. In a matter of first impression for this Court, we adopt the "any insurance" approach, which applies the plain meaning of the waiver, and therefore hold Jefferson County's subrogation claim is barred.

## I. The Plain Meaning of the AIA Subrogation Waiver Defines the Scope of the Waiver By the Source and Extent of the Insurance Coverage, Not By the Property Damaged.

The AIA subrogation waiver is well-known in the construction industry and it plays a critical role in the AIA contract's scheme of remedying construction losses through insurance claims, not lawsuits. See Am. Zurich, 387 S.W.3d at 61. The parties incorporated the 1987 version of the waiver:

> **11.3.7 Waivers of Subrogation.** The Owner and Contractor waive all rights . . . for damages caused by fire or other perils *to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work*, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. . . . A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

(Emphasis added.) We presume the waiver represents "the freely bargained agreement of the parties." Haegert v. Univ. of Evansville, 977 N.E.2d 924, 937 (Ind. 2012). Therefore, when the terms are "clear and unambiguous," we "apply the plain and ordinary meaning of that language and enforce the contract according to those terms." Id.

The waiver applies to all "damages caused by fire," but only *"to the extent covered* by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work." Thus, to determine which fire damages are covered by the subrogation waiver, we must look at everything that follows the phrase "to the extent." The positioning and plain meaning of the word "covered" restricts the scope of the subrogation waiver based on the source and extent of the property insurance *coverage*, not the nature of the *damages* or of the *damaged property*.

One of two kinds of property insurance coverage will trigger the waiver: (1) "property insurance obtained pursuant to this Paragraph 11.3" or (2) "other property insurance applicable to the Work." And as discussed earlier, paragraph 11.3 coverage can be either "property insurance in the amount of the initial Contract Sum" (i.e., builder's risk insurance) or an existing "all-risk" property insurance policy that covers both the entire existing property and the work. See Bruner & O'Connor, Jr., supra, § 5:220. Obtaining either form of insurance triggers paragraph 11.3 coverage,[3] and consequently triggers the subrogation waiver. The second kind of coverage that triggers the waiver is *any* other property insurance policy "applicable to the Work." This alternative is broader than paragraph 11.3 coverage, and serves as a catch-all provision describing any other property insurance that may cover construction-related damages. In sum, if property damages (of any sort) are "covered" by an insurance policy that fits within one of these two descriptions, the waiver applies. And here, Jefferson County was covered under a property insurance policy that fit within the first description—an "all-risk" policy that covered both existing property and the work.

Jefferson County argues that we should begin our analysis instead with the language of the AIA insurance requirement—paragraph 11.3—not the plain meaning of the subrogation waiver itself. Because the AIA contract requires Jefferson County to procure insurance only for the work, not the entire courthouse, Jefferson County believes the scope of the waiver should be just as narrow. But even though the scope of the insurance requirement is indeed narrow, the plain

---

[3] Courts that have considered the AIA subrogation waiver have disagreed on whether a pre-existing "all-risk" property insurance policy that covers all of an owner's property—including the work—fits under the paragraph 11.3 coverage or under the general category of "other property insurance applicable to the Work." Lexington Ins. Co. v. Entrex Commc'n Servs., Inc., 749 N.W.2d 124, 134 (Neb. 2008). But courts generally agree that such a policy is clearly one of the two. Id. at 133–34.

meaning of the waiver is not. Nothing in the AIA contract links the scope of the waiver to the minimum coverage property owners must procure under paragraph 11.3. Property owners are certainly free to use limited builder's risk insurance, which covers only the construction project and nothing else. But property owners are also free to use existing—and broader—"all-risk" insurance policies to cover *both* existing property and the work. Contrary to Jefferson County's argument, damages are waived "to the extent" the damages are "covered," not "to the extent" they are "applicable to the Work."

Jefferson County also argues that the "any insurance" approach would disrupt the allocation of construction risk agreed to by the parties—which it sees as Jefferson County covering damages to the work through property insurance and Teton covering damages to non-work property through liability insurance. But no such allocation between property and liability insurance is expressed anywhere in the contract. Rather, the waiver of subrogation plainly applies to "damages caused by fire or other perils"—without exception or distinction—"to the extent covered by *property* insurance." This necessarily implies that Teton's duty to procure *liability* insurance had no bearing on damages that are already covered by the Owner's property insurance. Finally, in a separate provision, the AIA contract provides that even when the Owner has both builders-risk coverage for the work and separate property insurance for "adjoining or adjacent" property, its subrogation waiver under paragraph 11.3.7 extends to "fire or other perils covered by this separate property insurance policy." This separate provision would be an anomaly within the AIA contractual scheme if the parties already expected Teton's liability insurance to cover non-work damages. In sum, we reject Jefferson County's understanding of the AIA contract's allocation of construction risk.

Thus, we adopt the "any insurance" approach to the AIA waiver because it reflects the plain and unambiguous meaning of the contract—that as long as a property owner's damages are covered by *any* property insurance policy used to insure construction-related damages (i.e., the work), the waiver applies to all damages. Under this approach, Jefferson County has waived its subrogation claim because it relied on its pre-existing "all-risk" property insurance policy to insure both the work and all other damages to the courthouse. Future parties that incorporate the AIA contract into their construction agreements are certainly free to restrict the scope of the subrogation waiver to work-related damages alone. But the parties did not adopt such a restriction here, so the waiver's plain meaning applies to bar Jefferson County's claim.

8

## II. The Plain Meaning of the AIA Waiver Is Consistent with the Majority of Courts Interpreting Similar AIA Waivers.

Our holding is supported by the majority of other jurisdictions that have adopted the "any insurance" approach when interpreting similar AIA waivers. The Nebraska Supreme Court's decision in Entrex, supra note 3, is a prime example. In Entrex, the owner of a television station contracted with Entrex to replace an analog television antenna with a digital antenna. 749 N.W.2d at 126. Their contract incorporated the same 1997 version of the AIA contract Teton and Jefferson County used. Id. at 127. It required the owner to obtain property insurance to cover the work, which the owner did by relying on its existing "all-risk" property insurance policies, instead of "purchas[ing] a separate builder's risk policy covering the Work." See id. at 127, 131. The contract also waived all subrogation rights for damages "to the extent covered by property insurance obtained pursuant to this [agreement] or other property insurance applicable to the Work." Id. at 128. After the antenna collapsed during construction, the owner's insurance company, Lexington Insurance, covered all losses except the deductible, id. at 126, then brought a subrogation claim against Entrex for non-work damages, id. at 131.

The Nebraska Supreme Court held that the AIA subrogation waiver unambiguously applied "to both the Work and the non-Work property." Id. at 132. It relied on several decisions from other jurisdictions that had reached the same conclusion. Id. at 134 (discussing Haemonetics Corp. v. Brophy & Phillips Co., Inc., 501 N.E.2d 524 (Mass. App. Ct. 1986) and Lloyd's Underwriters v. Craig & Rush, Inc., 32 Cal. Rptr. 2d 144 (Cal. Ct. App. 1994)). "[T]he scope of the waiver clause was not defined by the property damaged, but, rather, *by the extent the damages were covered* by those policies described in the [waiver] clause." Id. at 134 (emphasis added). As long as the non-work damages were covered under the same policy that covered the work, the subrogation waiver applied. Id. The Nebraska Supreme Court also found that this approach was "more consistent with other provisions in the parties' agreement" and "furthers the purpose of the waiver clause," namely avoiding disruptive litigation and eliminating disputes over whether damages were caused to work or non-work property. Id. at 134–35.

Entrex represents just one of twelve other jurisdictions that have already adopted the "any insurance" approach.[4] And each of these cases relies primarily upon the plain meaning of the AIA waiver, just as we do today.

Yet, two recent decisions by our Indiana Court of Appeals applied the "Work versus non-Work" approach to the very same AIA subrogation waiver we consider today. Midwestern, 801 N.E.2d at 672–73; Allen County, 997 N.E.2d at 54–55. Unlike the Court of Appeals opinion below and the majority of jurisdictions applying the "any insurance" approach, both Midwestern and Allen County held that the AIA waiver applies to cover damages only to the work and never damages to existing property unrelated to the construction—even if such non-work damages are covered by the same "all-risk" property insurance policy used to insure the work. And another Court of Appeals decision has assumed—without discussing—the central holding of those two decisions. Bhd. Mut., 971 N.E.2d 127 (holding that floor installed by property owner was not part of the work and thus not subject to the AIA subrogation waiver). The "Work versus non-Work" approach does have support in several other jurisdictions,[5] but we believe that the "any insurance" approach more faithfully tracks the plain meaning of the contract. We therefore resolve the split in authority created by the Court of Appeals (now-vacated) decision in this case and apply the "any insurance" approach to bar Jefferson County's claim.

---

[4] ASIC II Ltd. v. Stonhard, Inc., 63 F. Supp. 2d 85 (D. Me. 1999); Lloyd's Underwriters, 32 Cal. Rptr. 2d 144; Hous. Inv. Corp. v. Carris, 389 So. 2d. 689 (Fla. Ct. App. 1980); E.C. Long, Inc. v. Brennan's of Atlanta, Inc., 252 S.E.2d 642 (Ga. Ct. App. 1979); Willis Realty Assocs. v. Cimino Constr. Co., 623 A.2d 1287 (Me. 1993); Haemonetics, 501 N.E.2d 524 (interpreting AIA form A201-1976); Emp'rs Mut. Cas. Co. v. A.C.C.T., Inc., 580 N.W.2d 490 (Minn. 1998) (interpreting AIA form A201-1987); Entrex, 749 N.W.2d 124 (interpreting AIA form A201-1997); Chadwick v. CSI, Ltd., 629 A.2d 820 (N.H. 1993); Mu Ch. of Sigma Pi Fraternity of U.S., Inc. v. Ne. Constr. Servs., Inc., 709 N.Y.S.2d 677, 680 n.2 (N.Y. App. Div. 2000), leave to appeal denied; Westfield Ins. Grp. v. Affinia Dev., LLC, 982 N.E.2d 132 (Ohio Ct. App. 2012) (interpreting AIA form A201-2007); Trinity Universal Ins. Co. v. Bill Cox Const., Inc., 75 S.W.3d 6 (Tex. App. 2001).

[5] Fid. & Guar. Ins. Co. v. Craig-Wilkinson, Inc., 948 F. Supp. 608 (S.D. Miss. 1996), aff'd, 101 F.3d 699 (5th Cir. 1996) (interpreting AIA form A201-1987); Copper Mountain, Inc. v. Indus. Sys., Inc., 208 P.3d 692 (Colo. 2009) (en banc); Butler v. Mitchell-Hugeback, Inc., 895 S.W.2d 15 (Mo. 1995) (en banc); S.S.D.W. Co. v. Brisk Waterproofing Co., Inc., 556 N.E.2d 1097 (N.Y. 1990); Travelers Ins. Cos. v. Dickey, 799 P.2d 625 (Okla. 1990); Pub. Emp. Mut. Ins. Co. v. Sellen Const. Co., Inc., 740 P.2d 913 (Wash. Ct. App. 1987) (interpreting A201-1976).

**Conclusion**

Jefferson County agreed to waive its rights to bring this subrogation claim by relying on its existing "all-risk" property insurance policy that covered the work and all other losses suffered in the courthouse fire. We reach this decision because the plain language of the AIA contract restricts the scope of the waiver based on the source and extent of property insurance coverage, not the nature of the damages. Accordingly, we affirm summary judgment in favor of Contractors and against Jefferson County in all respects.

Dickson, Rucker, David, and Massa, JJ., concur.