



FILED

Sep 30 2025, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

### IN THE
# Court of Appeals of Indiana

Bryan Builders, LLC, and Amazon.com Services, LLC,

*Appellants-Defendants*

v.

The Cincinnati Casualty Company, Fair Family Corporation, Steel Services, Inc., Atlantic Casualty Insurance Co., and Scottsdale Insurance,

*Appellees-Plaintiffs*

---

September 30, 2025

Court of Appeals Case No.
24A-CT-1068

Appeal from the Hendricks Superior Court

The Honorable Mark A. Smith, Judge

Trial Court Cause No.
32D04-2210-CT-145

---

**Vaidik, Judge.**

# Case Summary

[1] Parties to construction projects often include agreements to insure or waivers of subrogation in their contracts in an effort to avoid liability by allocating it to an insurer. The project owner and contractor here did so by incorporating American Institute of Architects standard contracts into their master agreement, which delegated insurance responsibilities to each of the parties and contained a subrogation waiver. The agreement required the project owner to obtain all-risk property insurance and provided that the owner and contractor waive all subrogation rights against each other and any subcontractors or sub-subcontractors for damages covered by property insurance.

[2] After a fire broke out during construction, the contractor paid to repair the project site. The property insurer didn't pay anything because the damage amounted to less than the deductible on the all-risk policy. Even so, because the property damage falls within the all-risk policy's coverage terms, we hold that the damage was still "covered by property insurance" within the meaning of the subrogation waiver. Thus, the waiver bars the contractor's claim for reimbursement for the repair costs. We therefore affirm the trial court's grant of

summary judgment to the subcontractor, the sub-subcontractor, and their insurers.

## Facts and Procedural History

[3]     In 2017, Amazon and Bryan Builders, LLC entered a Master Agreement for construction projects nationwide.[1] This agreement incorporates standard American Institute of Architects (AIA) Documents A102 and A201 with various modifications. *See* Appellants' App. Vol. 5 pp. 111, 142, 181, 249. The Master Agreement creates a comprehensive risk-allocation scheme with two key components: insurance requirements and a subrogation waiver.

### The Master Agreement

[4]     Under Section 11.3 of the Master Agreement, Amazon, as Owner, must maintain property insurance that "include[s] the interests of the Owner, Contractor, Subcontractors and Sub-subcontractors as loss payees, as their interests may appear" and provides "'all-risk' coverage," including coverage "against the perils of fire . . . and physical loss or damage." *Id.* at 233. Amazon obtained this coverage through ACE American Insurance Company ("ACE"), taking out an all-risk policy ("Amazon's All-Risk Policy") with a $35 million

---

[1] The dealings in this case involve several Amazon entities. The "Owner" in the Master Agreement is Amazon Corporate LLC. Appellants' App. Vol. 5 p. 111. The named insureds on the property-insurance policy obtained under the Master Agreement are "Amazon.com, Inc. and any subsidiary, and Amazon.com, Inc.'s interest in any partnership or joint venture in which Amazon.com, Inc. has management control or ownership . . . ." Appellants' App. Vol. 8 p. 245. And the "Owner" in the work order for the Plainfield project at issue here is appellant Amazon.com Services, LLC. Appellants' App. Vol. 6 p. 73. The parties use "Amazon" to refer to these entities interchangeably, so we do the same.

deductible. Amazon's All-Risk Policy "insures against Direct Physical Loss and/or Damage to property," including "Property While in the Course of Construction," Appellants' App. Vol. 9 pp. 6, 9, but it "does not include general liability, workers compensation, or employers' liability insurance," Appellants' Reply Br. p. 43.

Section 5.3.1 of the Master Agreement provides that if a subcontractor or sub-subcontractor is hired to perform part of the work, their contracts "shall contain provisions that . . . require the Subcontractor[ or] Sub-subcontractor . . . to carry and maintain insurance coverage in amounts which are customary to the industry and sufficient to protect the Owner." Appellants' App. Vol. 5 p. 214. Although Section 5.3.1 doesn't specify the type of insurance subcontractors and sub-subcontractors must carry, Section 11.1 requires Bryan Builders to maintain liability insurance and states that this same liability-insurance requirement applies to any subcontractors and sub-subcontractors "[u]nless modified by an applicable Work Order." *Id.* at 233.

Regarding subrogation, the Master Agreement provides that Amazon and Bryan Builders "waive all rights against . . . each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other . . . for damages caused by fire or other causes of loss occurring prior to Final Completion to the extent . . . covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work . . . ." *Id.* at 234. Amazon and Bryan Builders must require of any subcontractors or sub-subcontractors "similar waivers each in favor of [the] other parties" to the

project. *Id.* The Master Agreement states that a subrogation waiver is "effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise . . . ." *Id.* at 235.

## The Project

[7] In January 2022, Amazon and Bryan Builders signed a work order for Bryan Builders to add a dehumidification unit to a warehouse in Plainfield. *See* Appellants' App. Vol. 6 p. 73. Amazon doesn't own the warehouse—Ambrose Plainfield Industrial IV, LLC does—but "Amazon.com, Inc." is listed as the "Tenant Guarantor" on the warehouse lease. *Id.* at 112. Bryan Builders then entered into a subcontract agreement with Steel Services, Inc. ("the Subcontract") for Steel Services to provide certain labor and materials for the dehumidification project. Steel Services later entered into an agreement with Fair Family Corporation ("the Sub-subcontract") to perform welding and other work on the dehumidification project.

## The Subcontract between Bryan Builders and Steel Services

[8] Bryan Builders and Steel Services are the only parties to the Subcontract— Amazon didn't sign it. *See* Appellants' App. Vol. 3 p. 109. Under Section 3.3.7 of the Subcontract, Steel Services agreed to, "at its own expense, fully protect, insure, and secure its Work from injury or damage until final acceptance of the Project and final payment." *Id.* at 97. Steel Services must remedy "[a]ny damage caused to [its] Work" and any "damage to the Work, person or property of [Amazon], [Bryan Builders,] or others" caused by Steel Services's

operations. *Id.* Section 3.3.7 of the Subcontract further provides that Steel Services "shall have primary responsibility and liability for and defend and indemnify [Bryan Builders] against any damages or losses which may be incurred or claimed." *Id.*

[9] The Subcontract provides that if its terms conflict with the terms of the Master Agreement, the Subcontract's terms control. *See id.* at 84. The Subcontract originally contained a flow-down clause stating that Steel Services "agrees to be bound to and to assume toward [Bryan Builders] all the obligations and responsibilities" Bryan Builders has toward Amazon under the Master Agreement. *Id.* at 85. But an addendum to the Subcontract deletes the flow-down clause and states that "[a]ny references to [the Master Agreement] shall be void." *Id.* at 110.

[10] In accordance with the Master Agreement's insurance requirements, the Subcontract obligates Steel Services to purchase and maintain liability insurance. Any insurance policy "shall name [Bryan Builders and Amazon] as Additional Insureds" and "waive all rights of subrogation in favor of [Bryan Builders and Amazon]." *Id.* at 107-08. Bryan Builders's and Amazon's additional-insured coverage is to "apply on a primary basis." *Id.* at 108.

**The Sub-subcontract between Steel Services and Fair Family**

[11] Only Steel Services and Fair Family—not Bryan Builders or Amazon—signed the Sub-subcontract. *See id.* at 125. The Sub-subcontract provides that Fair Family must indemnify Amazon and Steel Services against any claims for

damage arising out of Fair Family's work. *See id.* at 129. Like the Subcontract, the Sub-subcontract requires Fair Family to carry liability insurance naming Bryan Builders and Amazon as additional insureds and to "obtain from each of its insurers a waiver of subrogation" in favor of Bryan Builders and Amazon. *Id.* at 136. Bryan Builders's and Amazon's additional-insured coverage is to "apply as primary insurance." *Id.*

### Steel Services's and Fair Family's Insurance Policies

[12] In satisfaction of their insurance obligations under the Master Agreement and their respective subcontracts, Steel Services had a liability-insurance policy with The Cincinnati Casualty Company, and Fair Family had a policy with Atlantic Casualty Insurance Co. Under both the Cincinnati Casualty and Atlantic policies, the insurers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Appellants' App. Vol. 2 p. 109; Appellants' App. Vol. 4 p. 143. The policies include commercial general liability, umbrella liability, worker's compensation, and employer's liability coverage.

### The Fire and Aftermath

[13] In June 2022, while Fair Family was performing welding work on the warehouse project, a fire broke out, causing significant damage. Based on several provisions of the Master Agreement making Bryan Builders responsible for remedying any property damage caused by itself, a subcontractor, or sub-subcontractor, *see* Appellants' App. Vol. 5 pp. 208, 215, 229, Bryan Builders

hired remediation contractors and paid approximately $1 million for emergency clean up and decontamination.[2] Since the costs fell within the $35 million deductible of Amazon's All-Risk Policy with ACE, ACE didn't make any payments.

[14] After the cleanup, Bryan Builders sought reimbursement from Steel Services and Fair Family. When both companies and their insurers denied liability, litigation ensued. Cincinnati Casualty filed a complaint for declaratory relief against Bryan Builders, Amazon, and Fair Family seeking an order that Amazon's All-Risk Policy provided coverage for the fire damage. Multiple counterclaims, cross-claims, and third-party complaints followed. Bryan Builders, Cincinnati Casualty, and Atlantic each filed motions for summary judgment, and Steel Services and Fair Family joined in Cincinnati Casualty's and Atlantic's motions.

[15] The trial court granted the insurance companies' summary-judgment motions and denied Bryan Builders's motion. The court held that: (1) Amazon's All-Risk Policy "provides All Risk Coverage in favor of Bryan Builders, Steel Services, and Fair Family for all damages due to the fire"; (2) the Master Agreement's subrogation waiver barred Bryan Builders's claims against Steel Services and Fair Family; and (3) in any event, "[n]either Amazon Services nor Bryan Builders had standing" because "[n]either Amazon nor Bryan has the

---

[2] Though the Master Agreement called for Bryan Builders to maintain insurance, it is unclear whether it did.

right to recover for property damage to property they do not own." Appellants' App. Vol. 2 pp. 37-38.

[16] Amazon and Bryan Builders now appeal.[3]

# Discussion and Decision

[17] Amazon and Bryan Builders contend the trial court erred in denying Bryan Builders's summary-judgment motion and in granting Cincinnati Casualty and Atlantic's motions, in which Steel Services and Fair Family joined. We review a motion for summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). That is, "The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule

---

[3] We must mention the format of Amazon and Bryan Builders's opening brief. Rather than typing out the text of the relevant contractual provisions, Amazon and Bryan Builders included screenshots of portions of the contracts as images. Their counsel states that the brief contains fewer than 14,000 words (the limit for an appellant's brief under Indiana Appellate Rule 44) "as counted by the word processing system used to prepare the Brief," Appellants' Br. p. 81, as permitted by Appellate Rule 44(F). But given the number of screenshots in the brief (over 50) and the number of words in each screenshot (some containing hundreds of words), the text depicted in these images was not counted toward the word limit. Even without the screenshots, the brief is right around 14,000 words, so counting the text in the screenshots, the brief is thousands of words over the limit.

Under Appellate Rule 44(C), the only portions of an appellant's brief that may be excluded from the word count are the cover information, table of contents, table of authorities, signature block, certificate of service, and word count certificate. And Appellate Rule 44(F)'s statement that a party "may rely on the word count of the word processing system used to prepare the brief" does not mean that a party can omit the words in images of text if the word processing system used doesn't include those words in its word count. Amazon and Bryan Builders thus should have counted the text in the screenshots toward their word limit and either made omissions to stay within the limit or moved for leave to file an oversized brief under Appellate Rule 44(B) (as they did for their reply brief). But the appellees haven't moved to strike the brief or asked us to take any other remedial action, so we proceed on the brief as written.

56(C). The interpretation of a contract is a question of law reviewed de novo, with the goal of determining the parties' intent when they made the agreement. *Franciscan All. Inc. v. Metzman*, 192 N.E.3d 957, 963 (Ind. Ct. App. 2022). In doing so, we must examine the contract's plain language, read it in context, and, whenever possible, construe it to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. *Id.*

## I. Bryan Builders has standing to pursue its claims

[18] We begin our analysis with standing. *See Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 215 (Ind. 2022) ("Standing is a threshold issue: if it is lacking, the court cannot consider the merits of the claim."). Standing is an issue of law that we review de novo. *City of Gary v. Nicholson*, 190 N.E.3d 349, 351 (Ind. 2022). Standing requires "a personal stake in the outcome of the litigation" and "a direct injury as a result of the complained-of conduct." *Bd. of Comm'rs of Union Cnty. v. McGuinness*, 80 N.E.3d 164, 168 (Ind. 2017).

[19] The trial court concluded that "[n]either Amazon Services nor Bryan Builders had standing" because "[n]either Amazon nor Bryan has the right to recover for property damage to property they do not own." But Bryan Builders does have standing. Its obligations under the Master Agreement and the costs it paid to remedy the fire damage establish a personal stake in the outcome of the lawsuit and constitute a direct injury. The Master Agreement makes Bryan Builders responsible to Amazon for the acts and omissions of any subcontractors or sub-subcontractors and requires Bryan Builders to repair at its own expense any

damage caused by itself, a subcontractor, or a sub-subcontractor. After the fire, Bryan Builders paid around $1 million to repair and remediate the damage and is now seeking reimbursement for that amount. This constitutes a direct injury and establishes a personal stake in the outcome of the case. The trial court therefore erred in finding that Bryan Builders lacked standing.[4] *See Steury v. N. Ind. Pub. Serv. Co.*, 510 N.E.2d 213, 215 (Ind. Ct. App. 1987) ("[T]he trial court erred in determining that Steury lacked standing to bring this cause of action against NIPSCO as Steury acted under compulsion for the protection of his obligation under the contract . . . ."), *reh'g denied*.

## II. The Master Agreement places the risk of fire loss on Amazon's All-Risk Policy

[20] To decide this case, we must examine the risk-allocation scheme in the Master Agreement. "[W]hen a contract contains an agreement to insure or a waiver of subrogation, the parties demonstrate their intent to avoid liability by allocating it to an insurer." *U.S. Automatic Sprinkler Corp. v. Erie Ins. Exch.*, 204 N.E.3d 215, 223 (Ind. 2023). An agreement to insure is meant to provide the parties with the benefits of insurance regardless of the cause of the loss—otherwise, each would

---

[4] Amazon and Bryan Builders also argue that Amazon has standing and is a real party in interest, but we need not decide this issue as to Amazon. Amazon has not asserted a claim for the fire damage or requested reimbursement for the amount Bryan Builders paid—only Bryan Builders itself did. The only reason Amazon is a party to this litigation is because Cincinnati Casualty named Amazon as a defendant in its complaint for declaratory relief. Amazon never filed a counterclaim, cross-claim, or third-party complaint or moved for summary judgment. Because it has not attempted to invoke the court's power, the standing and real-party-in-interest requirements do not apply to Amazon. But because Amazon was brought into the case by Cincinnati Casualty and had judgment entered against it by the trial court, it certainly has the right to be part of this appeal.

provide its own insurance protection, and there would be no need for the contract to place the duty on one of them. *Id.* at 222. "Like an agreement to insure, a subrogation waiver signifies the contracting parties' intent to recover damages through insurance claims, not lawsuits . . . ." *Id.* (quotation omitted).

## A. The Master Agreement incorporates American Institute of Architects contract language

AIA form contracts are commonly used in the construction industry to outline the terms for performance of work and the responsibilities of the parties to a project. Amazon and Bryan Builders incorporated AIA Documents A102 and A201 into the Master Agreement, particularly those sections setting forth insurance requirements and waivers of subrogation. We have recognized that these provisions "reveal[] a studied attempt by the parties to require construction risks to be covered by insurance and to allocate among the parties the burden of acquiring such insurance." *S. Tippecanoe Sch. Bldg. Corp. v. Shambaugh & Son, Inc.*, 395 N.E.2d 320, 326 (Ind. Ct. App. 1979) (quotation omitted), *reh'g denied*.

In *South Tippecanoe*, we concluded that AIA Document A201's property-insurance requirement and subrogation waiver demonstrated an intent that "the parties were to be limited in recovery for property damage to the proceeds of the insurance required to be carried under the contract, rather than to the individual assets of a negligent Defendant." *Id.* at 327-28. Similarly, in *Performance Services, Inc. v. Hanover Insurance Co.*, 85 N.E.3d 655, 664 (Ind. Ct. App. 2017), where we examined the interplay between an AIA contract and several subcontracts, we

observed, "The language of the contracts evidenced an intent of the parties to allocate construction risks to their insurers—a business decision as to who would pay if damage to property occurred during the Project."

[23] This "scheme of remedying construction losses through insurance claims, not lawsuits," *Bd. of Comm'rs of Cnty. of Jefferson v. Teton Corp.*, 30 N.E.3d 711, 715 (Ind. 2015), not only protects those performing work on a project but also benefits the project owner. If damage occurs during the work, a contractual allocation of construction risks to property insurance avoids disputes among the parties as to who must pay for the damage. And waivers of subrogation prevent litigation among the parties and work stoppages caused thereby. Amazon and Bryan Builders's use of this scheme in the Master Agreement ensured that if a fire or other accident causing damage occurred during construction, the work would not have to stop while the parties decided who was responsible for the damage. Instead, Amazon's property insurance would pay for the damage (once the deductible is met), and work could resume after cleanup.

## B. The Master Agreement requires Amazon to provide all-risk property insurance with coverage "against the perils of fire"

[24] Under Section 11.3 of the Master Agreement, Amazon is responsible for providing property insurance that "include[s] the interests of the Owner, Contractor, Subcontractors and Sub-subcontractors as loss payees, as their interests may appear." Appellants' App. Vol. 5 p. 233. This insurance must be "'all-risk' coverage," including coverage "against the perils of fire . . . and physical loss or damage." *Id.* Amazon's All-Risk Policy with ACE "insures

against Direct Physical Loss and/or Damage to property," including "Property While in the Course of Construction." Appellants' App. Vol. 9 pp. 6, 9. This is the exact type of loss for which Bryan Builders is seeking reimbursement—direct physical damage to the Plainfield warehouse project.

[25] As noted above, Amazon's property-insurance requirement under the Master Agreement establishes that if a fire or other construction accident—like the one here—occurred during the work, the property insurance would cover the damage, regardless of what party caused the accident (with payment by the insurer depending on whether the policy's deductible is met). In accordance with this risk-allocation scheme and the policy language, the fire damage here is covered by Amazon's All-Risk Policy.

[26] We acknowledge that ACE didn't pay for the damage here, but that's not because the damage isn't covered by Amazon's All-Risk Policy. Rather, ACE didn't pay because the cleanup and remediation costs totaled around $1 million, but Amazon's All-Risk Policy has a $35 million deductible.

## C. Amazon and Bryan Builders waived their rights to subrogate against Steel Services and Fair Family for fire damage that is covered by property insurance

[27] Because the property damage here falls within the coverage of Amazon's All-Risk Policy, the subrogation waiver in the Master Agreement bars Bryan Builders's claims for recovery. The Master Agreement states that Amazon and Bryan Builders "waive all rights against . . . each other and any of their subcontractors[ and] sub-subcontractors . . . for damages caused by fire or other

causes . . . to the extent . . . covered by property insurance obtained pursuant to this Section 11.3." Appellants' App. Vol. 5 p. 234. This language is "unambiguously broad." *U.S. Automatic Sprinkler*, 204 N.E.3d at 221. It waives Amazon's and Bryan Builders's rights to recover from each other, subcontractors, and sub-subcontractors for fire damage "to the extent covered by property insurance"—meaning Amazon's All-Risk Policy.

[28] In *Teton*, our Supreme Court examined the same subrogation waiver in an earlier version of AIA Document A201. The Court held that the "Owner" obtaining an "'all-risk' property insurance policy . . . triggers paragraph 11.3 coverage, and consequently triggers the subrogation waiver." *Teton*, 30 N.E.3d at 716 (footnote omitted). The Court found the Owner's subrogation claim was barred because the subrogation waiver "plainly applies to damages caused by fire or other perils—without exception or distinction—to the extent covered by *property* insurance." *Id.* at 717. When Amazon took out its All-Risk Policy with ACE as required by Section 11.3 of the Master Agreement, it triggered Amazon's and Bryan Builders's waivers of their subrogation rights under the Master Agreement. This waiver applies without exception to fire damage that is covered by Amazon's All-Risk Policy—including the fire damage here. The subrogation waiver bars Bryan Builders's claims for reimbursement.

### D. Our interpretation of these provisions does not conflict with the rest of the Master Agreement

[29] Amazon and Bryan Builders contend the only interpretation of the Master Agreement "that harmonizes and gives meaning to all of the terms" is that

"when [Bryan] Builders itself does work on a project, Amazon's All-Risk policy will apply," but "when Bryan Builders subcontracts out work to a third party, . . . the Subcontractor and Sub-subcontractor must procure insurance which will apply to that specific project." Appellants' Reply Br. p. 27. This interpretation ignores the provisions requiring Amazon to procure property insurance that includes the interests of subcontractors and sub-subcontractors and disregards the subrogation waiver in favor of the subcontractors and sub-subcontractors.

[30] Amazon and Bryan Builders support their interpretation by citing Section 5.3.1 of the Master Agreement, which they claim "sets out different insurance responsibilities when a Subcontractor or Sub-subcontractor does the work." *Id.* at 15. But Section 5.3.1 simply states that any subcontract or sub-subcontract shall "require the Subcontractor[ or] Sub-subcontractor . . . to carry and maintain insurance coverage in amounts which are customary to the industry and sufficient to protect the Owner." Appellants' App. Vol. 5 p. 214. It does not state what type of insurance coverage the sub- and sub-subcontractors must carry or that it replaces or overrides Amazon's property-insurance requirement.

[31] Section 11.1 of the Master Agreement, on the other hand, does specify what kind of insurance subcontractors and sub-subcontractors must carry. This section requires the contractor to maintain liability insurance, including commercial general liability, employer's liability, and worker's compensation coverage, and states that subcontractors and sub-subcontractors must also comply with these insurance requirements. *See id.* at 232-33. Amazon and Bryan Builders acknowledge that Amazon's All-Risk Policy "does not include

general liability, workers compensation, or employers' liability insurance." Appellants' Reply Br. p. 43. Because Amazon's All-Risk Policy does not provide the same coverage as the insurance required of subcontractors and sub-subcontractors under the Master Agreement, we reject Amazon and Bryan Builders's argument that the All-Risk Policy does not apply when subcontractors or sub-subcontractors work on the project.

[32] Amazon and Bryan Builders also claim the subrogation waiver doesn't apply because "nothing was paid by an insurer," so "none of the damages have been 'covered by' any property insurance" within the meaning of the waiver provision. Appellants' Br. p. 58. This conflates coverage with payment. *South Tippecanoe* directly refutes this argument. There, we held that the subrogation waiver ("The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance provided under this Paragraph 11.3 . . . .") applied to both the amounts paid out under the owner's property-insurance policy and the $1,000 deductible paid by the owner. *S. Tippecanoe*, 395 N.E.2d at 323. We noted that the owner "became the insurer of the other contracting parties to the extent of the deductible." *Id.* at 334. Thus, even though the $1,000 was paid by the owner itself, not its property insurer, it was still "covered by" the property insurance such that the subrogation waiver barred recovery for that amount.

[33] Again, the reason ACE didn't pay for the damages here is that Bryan Builders's cleanup costs (around $1 million) were less than the deductible under Amazon's All-Risk Policy ($35 million). Like the $1,000 deductible in *South Tippecanoe*,

even though ACE didn't pay the $1 million, that amount is still covered by the All-Risk Policy under the Master Agreement's subrogation waiver, and thus the waiver applies.

## III. The Subcontract and Sub-subcontract don't override or replace the Master Agreement

[34] In an attempt to avoid the waivers of their subrogation rights and Amazon's insurance obligation under the Master Agreement, Amazon and Bryan Builders point to several provisions in the Subcontract and Sub-subcontract. These arguments ultimately fail, but we address each in turn.

### A. The Subcontract doesn't alter Amazon's obligations under the Master Agreement because Amazon wasn't a party to the Subcontract

[35] Amazon and Bryan Builders cite Section 3.3.7 of the Subcontract, which provides that Steel Services "shall promptly remedy" "damage caused by [its] operations." Appellants' App. Vol. 3 p. 97. Amazon and Bryan Builders claim this provision "establishes that . . . Steel Services . . . is responsible for all damages on the Project caused by itself or its third-party Sub-subcontractors." Appellants' Br. p. 48. But the Subcontract doesn't eliminate Amazon's obligations under the Master Agreement, particularly the obligation that Amazon's All-Risk Policy must provide coverage against the perils of fire and physical loss or damage.

[36] First, Amazon didn't sign the Subcontract. Bryan Builders cannot unilaterally alter Amazon's obligations under the Master Agreement via the Subcontract

because Amazon was not a party to the Subcontract. Additionally, while the Subcontract originally contained a flow-down clause stating that Steel Services assumed toward Bryan Builders all the obligations and responsibilities Bryan Builders had toward Amazon under the Master Agreement, the Subcontract addendum deleted the flow-down clause. *See* Appellants' App. Vol. 3 p. 110. Notwithstanding Section 3.3.7 of the Subcontract, Amazon's All-Risk Policy is still responsible for the fire damage under the Master Agreement (to the extent the policy's deductible is met).

## B. The Master Agreement's subrogation waiver applies over Steel Services's duties of indemnification in the Subcontract

[37] Amazon and Bryan Builders also claim that Steel Services's indemnification duties under the Subcontract make Steel Services responsible for the fire damage. The Subcontract provides that Steel Services "shall have primary responsibility and liability for and defend and indemnify [Bryan Builders] against any damages or losses which may be incurred or claimed." *Id.* at 97. Amazon and Bryan Builders contend this duty to indemnify Bryan Builders was "triggered" because Bryan Builders had a "legal obligation" under the Master Agreement to pay for the repairs. Appellants' Br. p. 67.

[38] While the Master Agreement contains provisions making Bryan Builders responsible for remedying any property damage caused by itself, a subcontractor, or sub-subcontractor, *see* Appellants' App. Vol. 5 pp. 208, 215, 229, it also states, "A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of

indemnification, contractual or otherwise," *id.* at 235. Amazon's and Bryan Builders's waivers of their subrogation rights in the Master Agreement apply regardless of Steel Services's duties of indemnification under the Subcontract.

## C. Steel Services's unfamiliarity with the Master Agreement's contents does not render the Master Agreement inapplicable

[39] Amazon and Bryan Builders highlight that Steel Services hadn't seen the Master Agreement before signing the Subcontract and that the Subcontract addendum strikes all references to the Master Agreement. They argue that because Amazon's All-Risk Policy is provided for in the Master Agreement, and Steel Services wasn't aware of the contents of the Master Agreement, the All-Risk Policy shouldn't apply to Steel Services. But whether Steel Services knew of the All-Risk Policy when it entered into the Subcontract doesn't change that Amazon agreed to provide all-risk property insurance including the interests of any subcontractors or sub-subcontractors, which includes Steel Services. As the trial court observed, "The Subcontract between Bryan Builders and Steel Services did not waive any right of Steel Services to the All-Risk Coverage that Amazon was required to provide in favor of all contractors and subcontractors, including Steel Services and Fair Family." Appellants' App. Vol. 2 p. 37. Put differently, the Subcontract addendum striking references to the Master Agreement doesn't override Amazon's All-Risk Policy or remove Steel Services as a beneficiary of that policy.

[40] Using the same reasoning, Amazon and Bryan Builders argue that the Master Agreement's subrogation waiver shouldn't apply in favor of Steel Services

because Steel Services was only aware of the subrogation waiver in the Subcontract, not the one in the Master Agreement. We rejected a similar argument in *Performance Services*. There, Southwest Dubois County School Corporation hired a construction manager to oversee renovations to one of its schools. The "Construction Manager Contract" incorporated a version of AIA Document A201 under which "Southwest and the Construction Manager agreed to waive all subrogation rights against each other and all contractors for any damage that might occur during the Project that was covered by property insurance." *Performance Servs.*, 85 N.E.3d at 657-58. Southwest later contracted with Performance Services, Inc. (PSI) to complete part of the construction. That contract didn't include a subrogation waiver or incorporate the Construction Manager Contract by reference, instead including an integration clause.

[41] When Southwest's property insurer, Hanover, brought a subrogation action for damage that occurred during construction, PSI and a subcontractor argued that the action was barred by the subrogation waiver in the Construction Manager Contract. Hanover countered that because "the PSI Contract was a separate and distinct contract executed over 15 months after the Construction Manager Contract, . . . the PSI Contract, along with the Huntingburg Subcontract (which incorporates the PSI Contract), are the controlling agreements." *Id.* at 659 (quotations omitted). We held that "[t]he total effect of all the contracts was to distribute the risks incidental to the Project to an insurance carrier" and that "[t]he language of the Construction Manager Contract supports the conclusion that the intent of the parties was to waive all subrogation claims against

contractors and subcontractors"; "[t]he absence of waiver-of-subrogation language and the inclusion of an integration clause in the PSI Contract d[id] not convince us otherwise." *Id.* at 664.

[42] Like Hanover in *Performance Services*, Amazon and Bryan Builders try to evade the subrogation waiver in the Master Agreement by claiming that the Master Agreement doesn't apply because it was excluded from the Subcontract. But although the Subcontract addendum strikes all references to the Master Agreement, nothing in the Subcontract alters the Master Agreement or restores Amazon's or Bryan Builders's subrogation rights. Amazon and Bryan Builders waived all subrogation rights against any subcontractors and sub-subcontractors in the Master Agreement, and they are bound by that waiver.

**D. There is no conflict between the Master Agreement's subrogation waiver and the subrogation waivers in the Subcontract and Sub-subcontract**

[43] Amazon and Bryan Builders also contend "the Waiver of Subrogation provisions in the 2022 Subcontract and Sub-subcontract govern." Appellants' Reply Br. p. 27. They claim the Master Agreement's subrogation waiver does not apply because it conflicts with Steel Services's and Fair Family's waivers in favor of Amazon and Bryan Builders in the Subcontract and Sub-subcontract. But no conflict exists. Under the Master Agreement, Amazon and Bryan Builders waived their subrogation rights against each other and any subcontractors or sub-subcontractors. As explained above, this means that

Amazon and Bryan Builders cannot seek reimbursement from each other, Steel Services, or Fair Family for damages covered by Amazon's All-Risk Policy.

[44] The Subcontract and Sub-subcontract require Steel Services and Fair Family, respectively, to waive their subrogation rights in favor of Amazon and Bryan Builders. These waivers do not conflict with the Master Agreement's subrogation waiver; they merely impose the same limitations for recovery on Steel Services and Fair Family as the Master Agreement does on Amazon and Bryan Builders. In a situation where Steel Services's or Fair Family's insurance covered a loss, these waivers would prevent them (and their insurers) from seeking reimbursement from Amazon or Bryan Builders for the loss—just as Amazon and Bryan Builders can't seek reimbursement from Steel Services or Fair Family when the All-Risk Policy applies.

## IV. The Cincinnati Casualty and Atlantic insurance policies do not apply

[45] Amazon and Bryan Builders spend much of their brief arguing that the Cincinnati Casualty and Atlantic policies—not Amazon's All-Risk Policy— must cover the damage here. Under these policies, Cincinnati Casualty and Atlantic "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Appellants' App. Vol. 2 p. 109; Appellants' App. Vol. 4 p. 143. In other words, these policies apply only when there is liability by the insureds. But there is no liability by Steel Services or Fair Family here. As Atlantic explains, Steel Services and Fair Family "cannot have liability due to

the parties' agreement to shift the risk of loss by fire to property insurance, and the waiver/release of claims against each other." Atlantic's Br. pp. 44-45. And "[w]here liability is impossible, liability coverage is impossible." *Id.* at 20.

[46] Yet Amazon and Bryan Builders contend the Cincinnati Casualty and Atlantic policies apply because the subcontracts and policy documents provide that these policies are "primary" and "not contributory." Appellants' Br. pp. 50, 57. But the "primary" and "not contributory" language matters only when multiple policies cover the same loss. As just explained, the Cincinnati Casualty and Atlantic policies do not apply here because Steel Services and Fair Family are not liable for the fire damage. Amazon's All-Risk Policy alone covers the damage.

[47] For these reasons, the court properly granted Cincinnati Casualty's and Atlantic's motions for summary judgment and denied Bryan Builders's motion for summary judgment.[5]

[48] Affirmed.

---

[5] In response to Cincinnati Casualty's supplemental motion for summary judgment, Amazon and Bryan Builders designated, among other evidence, an affidavit from Meredith Philipp, Amazon Services's Corporate Counsel for Construction. Cincinnati Casualty moved to strike Philipp's affidavit, which the trial court granted. On appeal, Amazon and Bryan Builders argue the trial court abused its discretion in striking Philipp's affidavit. But even if the affidavit hadn't been stricken, we would still affirm the trial court's grant of summary judgment for Cincinnati Casualty because the substance of the affidavit has no bearing on our conclusions.

Bailey, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANTS

Terrence L. Brookie
Maggie L. Smith
Joshua N. Kutch
Frost Brown Todd LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE THE CINCINNATI CASUALTY COMPANY

Jerry E. Huelat
David A. Mack
Robert J. Penny
Huelat & Mack, P.C.
LaPorte, Indiana

ATTORNEYS FOR APPELLEE FAIR FAMILY CORPORATION

Scott B. Cockrum
Candace C. Dickson
Lewis Brisbois Bisgaard & Smith LLP
Highland, Indiana

ATTORNEYS FOR APPELLEE STEEL SERVICES, INC.

Evan M. Norris
Daniel M. Drewry
Drewry Simmons Vornehm, LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE ATLANTIC CASUALTY INSURANCE CO.

David L. Taylor
Audrey L. Smith
Taylor DeVore P.C.
Carmel, Indiana